**Renja SIGURDSON, Appellant,**

v.

**ISANTI COUNTY, et al., Respondents.**

**No. C2-86-2071.**

Court of Appeals of Minnesota.

June 23, 1987.

Review Denied Aug. 19, 1987.

David A. Singer, Singer & Singer, Ltd., Minnetonka, for appellant.

Richard A. Beens, Steffen & Munstenteiger, P.A., Anoka, for respondents.

Heard, considered and decided by CRIPPEN, P.J., and LESLIE and STONE,* JJ.

## OPINION

STONE, Judge.

This gender discrimination case is before us for the second time. The action originated when appellant Renja Sigurdson sued respondents Isanti County, Aaron Boettcher and Frank Mennenga, alleging sex discrimination in employment practices under the Human Rights Act, Minn.Stat. § 363.03, subd. 1(2)(c) (1982). The trial court rejected an advisory jury's finding of sex discrimination, denied appellant recovery on any of her claims and ordered her to pay Isanti County attorney's fees. This court affirmed the trial court's finding that appellant was not discriminated against on the basis of her sex but reversed the award of attorney's fees in *Sigurdson v. Isanti County,* 363 N.W.2d 476 (Minn.Ct.App. 1985).

The Minnesota Supreme Court granted review of the case and affirmed this court's reversal of attorney's fees but reversed and remanded for new findings on the discrimination issue. *See Sigurdson v. Isanti County,* 386 N.W.2d 715 (Minn.1986), holding that in employment discrimination cases based on disparate treatment and brought under the Human Rights Act, trial courts must make findings of fact and conclusions of law that explicitly apply the three-step analysis set out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

On remand, the trial court adopted Isanti County's proposed findings and conclusions of law verbatim and entered judgment in respondents' favor. Appellant subsequently moved for a new trial based on "newly discovered evidence" arising during pendency of the first appeal. The trial court denied the motion. This appeal from the judgment and the order denying a new trial followed. We affirm in part, reverse in part and remand.

* Acting as judge of the Court of Appeals by ap-

## FACTS

The facts underlying this case have been recited in detail both by this court in *Sigurdson v. Isanti County,* 363 N.W.2d 476 (Minn.Ct.App.1985) and by the supreme court in *Sigurdson v. Isanti County,* 386 N.W.2d 715 (Minn.1986) (*Sigurdson I*). This decision will simply highlight facts relevant to the trial court's findings and conclusions after remand.

## ISSUES

1. What is this court's standard of review following the supreme court's remand to the trial court for new findings in accordance with *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)?

2. Did the trial court err in finding and concluding that Sigurdson was not discriminated against by respondents on the basis of her gender with regard to hiring practices, advancement or retaliation?

3. Did the trial court err in denying appellant's new trial motion?

## ANALYSIS

### I.

In affirming the trial court's original findings and conclusions of law, this court noted that although the trial court did not specifically refer to the *McDonnell Douglas* analysis, it was "clear that the court used this three-step process to arrive at its decision." *Sigurdson,* 363 N.W.2d at 480–481. The supreme court disagreed, stating that the trial court's utilization of this analysis was "far from clear." *Sigurdson I,* 386 N.W.2d at 721. Stressing that effective and meaningful appellate review could only take place when the basis of a trial court's decision is set forth clearly and explicitly, the supreme court reversed this court on the discrimination issue, vacated the original judgment and remanded "for *new* findings and conclusions" that explicitly applied the *McDonnell Douglas* analysis. *Sigurdson I,* 386 N.W.2d at 722 (emphasis supplied).

pointment pursuant to Minn. Const. art. 6, § 2.

We are called upon to examine two aspects of this case: (1) whether the trial court's findings and conclusions reflect clear and explicit analysis of the *McDonnell Douglas* formula; and (2) whether, given this analysis, the trial court erred in finding and concluding that respondents did not discriminate against Sigurdson on the basis of her gender.

A complicating factor in our review of this case is the trial court's verbatim adoption of Isanti County's proposed findings and conclusions of law. Federal cases have uniformly disapproved of this practice as a dereliction of the trial court's function under Federal Rules of Civil Procedure 52(a), identical in substance to Minnesota Rules of Civil Procedure 52.01. *See, e.g., Equal Employment Opportunity Commission v. Federal Reserve Bank of Richmond,* 698 F.2d 633, 640 (4th Cir.1983), *reversed on other grounds by Cooper v. Federal Reserve Bank of Richmond,* 467 U.S. 867, 104 S.Ct. 2794, 81 L.Ed.2d 718 (1984); *Hosley v. Armour & Co.,* 683 F.2d 864, 866 (4th Cir.1982).

Although federal courts have firmly disapproved of this practice, no decision to our knowledge has held that verbatim adoption of a party's proposed findings and conclusions is reversible error per se. Rather, the "clearly erroneous" standard remains the proper standard of review.

The adoption by the District Court of proposed findings and conclusions, though disapproved, will not, however, warrant reversal of the cause *per se* nor does it mean that the " 'clearly erroneous' " rule of Rule 52(a) will not be applied at all, simply because the findings

and conclusions were developed by one of the parties and adopted in course by the judge.

*Federal Reserve Bank,* 698 F.2d at 641 (emphasis in original). Whatever the procedure adopted, we do not concur with appellant's claim that this was necessarily a failure of independent evaluation by the trial court. The record shows conscientious consideration of all the issues in a complex case.

## II.

Essentially, the *McDonnell Douglas* analysis provides a three-step approach for proving a case of disparate treatment based on gender:[1] (1) the plaintiff must present a prima facie case of discrimination by a preponderance of the evidence; (2) if the plaintiff is successful in establishing a prima facie case, the burden of production shifts to the employer to present evidence of some legitimate non-discriminatory reason for its actions; and (3) if the employer establishes some legitimate business reason for its actions, the burden of production then shifts back to the plaintiff to demonstrate that the reason or justification advanced by the employer is a mere pretext for discrimination. *Sigurdson I,* 386 N.W.2d at 720. At all times, the ultimate burden of persuasion rests on the plaintiff. *Id.* at 720 n. 2 (citing *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981)).

In *Sigurdson I,* the supreme court outlined a generalized formulation of a prima facie case under *McDonnell Douglas* (step one) for proof of Sigurdson's claims:

---

**1.** *McDonnell Douglas* dealt specifically with a "disparate treatment" claim in a racial discrimination action brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e et seq. (1982). In *Danz v. Jones,* 263 N.W.2d 395 (Minn.1978), the supreme court adopted this analysis for disparate treatment claims brought under the Minnesota Human Rights Act. *See also Hubbard v. United Press International, Inc.,* 330 N.W.2d 428 (Minn.1983); *Kaster v. Independent School District No. 625,* 284 N.W.2d 362 (Minn.1979). "Disparate treatment" cases, which involve allegations that an employer has treated "some people less favorably than others because of their race, color, religion, sex, or

national origin," are to be distinguished from "disparate impact" cases, which involve employment practices that are "facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity." *Sigurdson I,* 386 N.W.2d at 719 n. 1 (quoting *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1855 n. 15, 52 L.Ed.2d 396 (1977)). In contrast to "disparate treatment" cases, proof of discriminatory motive is not required in "disparate impact" cases. *International Brotherhood,* 431 U.S. at 336 n. 15, 97 S.Ct. at 1855 n. 15.

(1) plaintiff is a member of a protected group; (2) plaintiff sought and qualified for opportunities that the employer was making available to others; (3) plaintiff, despite her qualifications, was denied the opportunities; and (4) after plaintiff was denied, the opportunities remained available or were given to other persons with plaintiff's qualifications.

*Sigurdson I,* 386 N.W.2d at 720.[2]

In assessing whether the employer has rebutted the presumption (step two) of unlawful discriminatory action once the plaintiff has made a prima facie showing, a trial court "should look for evidence [that the employer's] actions were related to some legitimate business purpose." *Sigurdson I,* 386 N.W.2d at 720 (citing *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978)). The sufficiency of an employer's evidence should be evaluated in part to the extent it "frame[s] the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext." *Sigurdson I,* 386 N.W.2d at 720 (quoting *Burdine,* 450 U.S. at 255–56, 101 S.Ct. at 1094–95).

Assuming the employer has met its burden of production, then in order to prevail, the plaintiff must persuade the court by a preponderance of the evidence that the reason advanced by the employer was actually pretexual and that the employer intended to discriminate against her (step three). *Sigurdson I,* 386 N.W.2d at 720. This burden may be sustained by direct proof that "persuad[es] the court that a discriminatory reason likely motivated the employer" or by indirect proof "that the employer's proffered explanation is unworthy of credence." *Id.* (quoting *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095).

### Hiring of Becker & Johnson

■ Sigurdson claims that Aaron Boettcher discriminated against her by hiring Curtis Becker and Duane Johnson as deputy appraisers in the fall of 1975 when neither was certified at the time of hiring (a prerequisite to outside field assessing work) and when she was equally qualified to perform office duties of a deputy assessor. The evidence established that Sigurdson was hired to perform secretarial duties (essentially as a "clerk") and that the in-office work of "deputy assessors" and "clerks" substantially overlapped. Deputy assessors, however, earned approximately $4,000 more annually than clerks.

The trial court found that: (1) Sigurdson was hired in February 1975 to fill a temporary clerical position; (2) two ads for a CETA-funded deputy assessor position which ran unsuccessfully in January and August 1975 required a college degree and two years prior property appraisal experience, neither of which Sigurdson had; (3) a third ad for deputy appraiser in September 1975 dropped the college degree requirement but maintained the two-year property appraisal requirement; however, no one with appraisal experience applied; (4) because the County was in the process of changing from township assessment to county-wide assessment, it was imperative that the positions be filled as soon as possible. Since a majority of Isanti County consists of farmland, applicants were screened "on the basis of education and familiarity with farmland and farm buildings;" (5) Becker and Johnson were college graduates and "possessed the necessary farm background with knowledge of rural buildings and values so that little additional training would be required for certification;" (6) Sigurdson did not apply for the advertised positions; and (7) even if Sigurdson had applied, she was ineligible for the

---

2. The formula outlined in *Sigurdson I,* is a modified version of the showing necessary to establish a prima facie case of racial discrimination in *McDonnell Douglas:* "(i) that [the complainant] belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.13" *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. In footnote 13, the Supreme Court recognized that this prima facie showing would vary, depending on the factual circumstances of the case. *Id. See also, Hubbard,* 330 N.W.2d at 442.

CETA position because she had been continuously employed in the county assessor's office since February 1975. Based on these findings, the trial court concluded that Sigurdson:

[F]ail[ed] to show that she sought and qualified for opportunities the employer was making available to others the second element in a *McDonnell Douglas* prima facie case.

While we might take issue with specific findings, we hold that the evidence overall supported the trial court's conclusion that Sigurdson failed to establish a prima facie case of discrimination with regard to hiring of Becker and Johnson.

The trial court did err in finding that the ads for deputy assessors initially required a college degree. The first ad required certification as an appraiser and two years appraisal experience. The second and third ads maintained the certification requirement, dropped the two-year requirement and replaced it with a need for "assessing experience." As alluded to previously, this error does not change the propriety of the result.

It is undisputed that Sigurdson never applied for the position. She presented no evidence to support her claim that the county was under a duty to inform her of the opening and that it intentionally chose not to do so.

Finally, although Aaron Boettcher was aware that Sigurdson lived on a farm since 1973, Sigurdson did not come forward with evidence demonstrating that she had experience valuing agricultural land and farm buildings, a background both Becker and Johnson shared.

### *Retaliation*

Sigurdson also claims that she established a prima facie case of gender discrimination by demonstrating that she was denied advancement to a deputy assessor position in retaliation for filing a discrimination complaint against Mennenga with

the Human Rights Department in the fall of 1981. She further asserts that her prima facie showing was unrebutted and that even if rebutted, she proved by a preponderance of the evidence that purported disciplinary problems were pretexual.

Section 363.03, subd. 7(1) provides in relevant part:

Subd. 7. **Reprisals.** It is unfair discriminatory practice for any employer * * * or employee or agent thereof to intentionally engage in any reprisal against any person because that person:

1. Opposed a practice forbidden under this chapter or *has filed a charge*, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

Minn.Stat. § 363.03, subd. 7(1) (1982) (emphasis supplied).

The *Hubbard* court applied the *McDonnell Douglas* analysis to retaliation claims under section 363.03, subd. 7:[3]

In order to establish a prima facie case where an alleged retaliatory discharge is involved, an employee must establish: (1) statutorily-protected conduct by the employee; (2) adverse employment action by the employer; and (3) a causal connection between the two.

*Id.*

Clearly, Sigurdson fulfilled the first two prima facie elements of retaliatory action under *Hubbard*: (1) she engaged in "statutorily-protected conduct" by filing a discrimination claim against her employer with the Department of Human Rights; and (2) Mennenga's reprimands and his decision reconsidering Sigurdson's promotion to deputy assessor fall within the category of "adverse employer action," even if such action is not as pronounced as a discharge. The closer issue here is the third element, the causal connection between Sigurdson's statutorily-protected conduct and Mennenga's actions. In *Hubbard*, the court stated:

---

**3.** Although *Hubbard* was a discharge case, we do not interpret this to mean that its application is so limited. Indeed, in *Sigurdson I,* the supreme court cited *Hubbard* as support for explicit application of the *McDonnell Douglas* analysis in gender discrimination cases based on disparate treatment in the work environment. *Sigurdson,* 386 N.W.2d at 719–20.

[T]his causal connection may be demonstrated indirectly by evidence of circumstances that justify an inference of retaliatory motive, *such as a showing that the employer has actual or imputed knowledge of the protected activity and the adverse employment action follows closely in time.*

*Hubbard,* 330 N.W.2d at 445 (emphasis supplied).

In the present case, the trial court's findings reflect that although Sigurdson established a causal link between her statutorily-protected conduct and Mennenga's actions, Mennenga successfully rebutted the presumption of retaliatory action:

Based on the incidents [of a violation of county rules and insubordination], [respondents] met their burden of producing evidence demonstrating legitimate, non-discriminatory reasons for the discipline of [Sigurdson] as required in the second step of the *McDonnell Douglas* analysis. That the only evidence [Sigurdson] presented in rebuttal of [respondent's] explanation was her own testimony. That this court found [respondent's] witnesses to be credible. That [Sigurdson] failed to rebut [respondents] explanation by demonstrating pretext as required in the third step of the *McDonnell Douglas* analysis.

*See Hubbard,* 330 N.W.2d at 445.

This finding is not clearly erroneous. It is undisputed that Sigurdson violated department rules by entering a taxpayer's residence without permission. Mennenga was justified in taking disciplinary action. While three weeks of in-office review of the assessors manual was unnecessarily long in our view, Sigurdson is not blameless for the length of the disciplinary action. She made no effort whatever during this period to tell Mennenga that she had completed her "assignment," even though she testified that she was entirely familiar with the manual from the outset. Further, during an October 1981 meeting with Mennenga and Carolyn Drude, county personnel officer, Sigurdson indicated that if she were named a deputy assessor, she would not follow department policies that conflict-

ed with her views, including Mennenga's policies. Although Sigurdson subsequently changed her position and agreed to support Mennenga's policies, Mennenga could properly have questioned her sincerity and his ability to work with her effectively.

Moreover, there is little merit to Sigurdson's claim that incidents of continuing harassment provided sufficient evidence that Mennenga's motives for disciplining her were pretexual. Mennenga's refusal to allow Sigurdson to return to work in 1983, shortly after foot surgery, was based on a doctor's certificate that she was "totally disabled" for walking. Significantly, Sigurdson sought to return to work in the fall, the season for field appraisal work. Since she clearly could not perform field work at that time, Mennenga was justified in refusing her request.

Similarly, the evidence does not support Sigurdson's claim that she was wrongfully denied an opportunity to take a narrative writing course when Mennenga granted Curtis Becker permission to do so. Becker had already completed most of the 200 hours necessary to complete a required paper. While Mennenga initially conditioned his approval on Sigurdson's commitment to finish the paper in 90 hours, he subsequently reconsidered and told Sigurdson she could take the writing course if she committed to a schedule for completing the paper. Sigurdson refused to do so. Under the circumstances, the evidence was insufficient to prove Mennenga's actions were based on discriminatory motives.

### Advancement/Promotion

The trial court found that appellant had established a prima facie case of discrimination with regard to advancement when she became qualified to perform outside field appraisal work on December 1, 1976 and when she sought and was denied field appraisal work until August 1979. The trial court also found that Aaron Boettcher and Isanti County rebutted this presumption of discrimination with evidence that Sigurdson received the first opening available to do field appraisal work in the fall of 1979, an opening created by

Dean Boettcher's departure. Finally, the trial court found that Sigurdson failed to meet her burden of proving pretext.

The evidence supports the finding that Sigurdson established a prima facie case of discrimination with regard to advancement to a deputy assessor position. We take particular note of the trial court's finding that in early 1979, Aaron Boettcher informed Sigurdson that field appraisal work was "not women's work" and that he and Curtis Becker did not want to have a woman ride with them during field appraisals because it would create a negative public image. These statements were uncontested at trial and exacerbate a discriminatory situation.

The evidence, however, does not support the finding that Sigurdson was promoted to the first available opening for additional field appraisal work. It is undisputed that Duane Johnson terminated his employment with the county in April 1976. Sigurdson became certified in December 1976. While it is true that the county is under no obligation to create a *new* position when an employee enhances her credentials, we simply do not perceive this to be the situation before us upon remand.

Duane Johnson and Curtis Becker were both hired as deputy appraisers in the fall of 1975. Less than a year later, in April 1976, Johnson terminated his employment. Aaron Boettcher presented no evidence that the work load in this area decreased after Johnson's departure and offered no explanation as to why Johnson's duties were reassigned among existing deputy assessors when Sigurdson was qualified, as of December 1976, to assume Johnson's responsibilities.

Furthermore, we do not take lightly Aaron Boettcher's comment during a staff meeting that he intended to hire two men to fill the vacancy created by Dean Boettcher's departure in the spring of 1979. Although Aaron Boettcher denied specifying that these prospective male employees would be hired as deputy assessors, the evidence implies that he intended to fill the deputy assessor vacancies created by Dean Boettcher *and* Duane Johnson.

In short, the evidence amply supports a finding that an opening for a deputy assessor existed after April 1976, that Sigurdson was qualified to fill it as of December 1976 and that she was wrongfully denied this opportunity until the fall of 1979. We hold that the trial court clearly erred in finding that Aaron Boettcher successfully rebutted the presumption of gender discrimination with regard to advancement. Accordingly, we reverse on this issue and remand for an assessment of damages.

Although the trial court is not bound by the advisory jury's special verdict, and although the verdict did not segregate the elements of discrimination found to exist, the court may properly consider the jury's overall damage award of $19,500 as guidance in assessing appropriate damages for discrimination with regard to advancement.

## III.

Sigurdson lastly argues that the trial court abused its discretion in refusing to reopen trial proceedings for new evidence arising during pendency of the first appeal. In particular, Sigurdson points to her offer of proof that: (1) a college education was not a bona fide job qualification in 1984 when Dean Boettcher was rehired as a deputy assessor; (2) she had no disciplinary problems after Mennenga terminated his employment as county assessor; and (3) she remains grossly underpaid according to an equity pay study conducted in Isanti County. The trial court properly rejected these arguments.

We have already determined that even though a college education was not a prerequisite to a deputy assessor position, this erroneous finding was not dispositive of the case. Introduction of further evidence on this subject would do nothing to change the result and is, therefore, an insufficient basis for granting a new trial.

Although a new trial may be granted because of newly discovered evidence arising after trial, courts have consistently held that special caution should be exercised under these circumstances. *See Gau v. J. Borgerding & Co.*, 177 Minn. 276,

225 N.W. 22 (1929). Moreover, evidence that is merely impeaching will not be sufficient to warrant a new trial. *Schmalz v. Maxwell,* 354 N.W.2d 549, 553 (Minn.Ct. App.1984).

The trial court stated in its post-trial memorandum:

> The evidence of [appellant's] smooth working relationship with her superiors tends to show that [appellant] is trying to bolster a position that did not work at trial. The court had an opportunity to observe [appellant] at trial and to form an opinion as to her credibility on this issue. Her subsequent behavior is not relevant and does not alter the Court's opinion.

In light of our conclusions, we find no basis for reversible error in this connection.

The trial court also rejected Sigurdson's request to introduce evidence of the Isanti County pay equity study on the basis of Minn.Stat. § 471.997 (1986), which states:

> [471.997] Neither the commissioner of human rights *nor any state court* shall use or consider the results of any job evaluation system established under section 471.994 and the reports compiled under 471.995 in any proceeding or action commenced alleging discrimination before August 1, 1987, under chapter 363.

(Emphasis supplied.) Because the evidence was clearly inadmissible, the grant of a new trial on these grounds is without merit.

### DECISION

The trial court did not clearly err in finding and concluding that Sigurdson was not discriminated against on the basis of her gender with regard to hiring or retaliation and properly denied Sigurdson's motion for a new trial based on newly discovered evidence. The trial court clearly erred in finding and concluding that Sigurdson was not discriminated against with regard to advancement and promotion. On this latter issue we reverse and remand for an assessment and award of damages.

Affirmed in part, reversed in part and remanded.