**Renja SIGURDSON, Appellant,**

v.

**ISANTI COUNTY, et al., Respondents.**

**No. C2–88–1460.**

Court of Appeals of Minnesota.

Dec. 20, 1988.

Review Granted Feb. 22, 1989.

David A. Singer, David A. Singer, Ltd., Minnetonka, for appellant.

Richard A. Beens, Steffen & Munstenteiger, Anoka, for respondents.

Heard, considered and decided by PARKER, P.J., and RANDALL and BOWEN,* JJ.

* Acting as judge of the court of appeals by appointment pursuant to Minn. Const. art. VI, § 2.

## OPINION

ROBERT E. BOWEN, Acting Judge.

Appellant appeals from a judgment dismissing her claim for damages against respondents for discriminatory employment practices. The trial court concluded appellant's damages claim was untimely. We reverse.

## FACTS

This appeal arises out of a claim brought by appellant Renja Sigurdson against respondents Isanti County and certain county officials, alleging sex discrimination in employment practices. After two previous appeals, *see Sigurdson v. Isanti County*, 363 N.W.2d 476 (Minn.Ct.App.1985) and *Sigurdson v. Isanti County*, 386 N.W.2d 715 (Minn.1986), this court held that appellant was discriminated against in regard to advancement. *See Sigurdson v. Isanti County*, 408 N.W.2d 654 (Minn.Ct.App. 1987), *pet. for rev. denied* (Minn. Aug. 19, 1987). Accordingly, the case was remanded to the district court for an assessment of damages. *Id.* at 661. On remand, the district court ruled that appellant's claim for damages was time-barred. This appeal followed.

In 1975, appellant Renja Sigurdson was hired by respondent Isanti County as a secretary in the county assessor's office. Shortly thereafter, appellant requested approval to take course work that would lead to her certification in appraising. Approval was granted, and appellant became certified on December 1, 1976.

An opening for a deputy assessor position within the county assessor's office existed after 1976. However, appellant was not allowed to do field appraisals, the primary responsibility of a deputy assessor, until September 1979. Even then, appellant's salary was not increased because the county was under a cease and desist order from the Minnesota Bureau of Mediation Services effective May 1979. The order lasted throughout salary negotiations between the county workers' newly formed union and Isanti County. Under the union agreement, effective March 1980, appellant was classified as a "property appraiser." Curtis Becker, a male co-worker who had been doing field appraisal work since 1976, was classified as a "deputy assessor."

Even though Becker and appellant have done similar work since September 1979 (that of a deputy assessor), their differing classifications under the union agreement resulted in the following wage discrepancy as of the time of trial:

|  | 1980 | 1981 | 1982 | 1983 |
|---|---|---|---|---|
| Curtis Becker (Deputy Assessor) | $14,372 | 16,012 | 17,472 | 18,864 |
| Appellant (Property Appraiser) | $11,016 | 12,304 | 13,692 | 15,228 |

The job classifications enumerated in the union agreement were based in part on studies by the Association of Minnesota Counties (AMC). These studies, which the county contracted for in 1978 and 1979, had as their objective the classification and evaluation of all county employees for the purpose of establishing job classifications and salaries based upon tenure and job responsibilities.

The former executive secretary to the Isanti County Board, Carolyn Drude, testified that the county used the AMC studies as a starting point for determining the job classifications under the agreement. She stated that the county, with the input of the union, had the ultimate authority for placing workers within the classifications.

On October 30, 1980, appellant filed a charge with the Department of Human Rights. The Commissioner made a finding of no probable cause in February 1982, and affirmed that decision in May 1982. Appellant filed her complaint on July 7, 1982.

## ISSUES

1. Did the trial court err in determining that appellant's claim for damages was time-barred?

2. Is Minn.Stat. § 541.07(5) (1980) tolled during the pendency of a charge with the Department of Human Rights?

3. Is appellant entitled to attorney fees?

## ANALYSIS

■ 1. *Timeliness of Appellant's Claim for Damages.* The trial court concluded that appellant's claim for damages was time-barred "since [appellant] did not file a charge of discrimination with the Commissioner within six months after the occurrence date of the discriminatory practice." The trial court also added that "even if [appellant's] claim of discrimination were not time-barred, her claim for the remedy of back wages is time-barred" because her complaint was not timely.[1] In so concluding, the trial court determined that respondents' discriminatory actions against appellant ended in September 1979, the date appellant was allowed to do field appraisals.

■ The trial court misconstrued the nature of respondents' sex discrimination violation. Respondents finally allowed appellant to perform all the duties of a deputy assessor in September 1979, but respondents never increased appellant's salary to reflect her "promotion." Because of her classification under the union agreement, appellant has been and continues to be paid less than a male deputy assessor, even though they perform identical job duties. Respondents' failure to eliminate the salary discrepancy between appellant and her similarly situated male co-workers after her advancement to deputy assessor constitutes a continuing discriminatory employment practice. *See Bazemore v. Friday,* 478 U.S. 385, 106 S.Ct. 3000, 92 L.Ed.2d 315 (1986); *Equal Employment Opportunity Commission v. Inland Marine Industries,* 729 F.2d 1229 (9th Cir.), *cert. denied* 469 U.S. 855, 105 S.Ct. 180, 83 L.Ed.2d 114

(1984); *California State Employees' Association v. California,* 682 F.Supp. 1044 (N.D.Cal.1987). This case is unlike the case *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977). There, the Supreme Court held that an employee who is discharged for a discriminatory reason and thereafter rehired with a loss of seniority may not recover the resulting pay differential if the current seniority system is not discriminatory. Here, respondents' *present* salary structure carries the indicia of earlier discriminatory practices. Therefore, we reverse the trial court's determination that appellant's claim for damages is untimely.

■ 2. *Damages.* We hold that respondents' continuing discriminatory pay violation permits appellant to recover back pay retroactive two years from the date she filed her claim with the Department of Human Rights. *See Brotherhood of Railway & Steamship Clerks Lodge 364 v. State,* 303 Minn. 178, 229 N.W.2d 3 (1975); Minn.Stat. § 541.07(5) (1980). In so holding, we recognize that appellant's filing with the Department was a prerequisite to the commencement of legal proceedings. *See* Minn.Stat. § 363.14, subd. 1 (1980); *Cf. Griffin v. American Motor Sales Corp.,* 618 F.Supp. 455 (D.Minn.1985) (§ 541.07(5) not tolled while age discrimination claim was pending with Department of Human Rights since claim was not a prerequisite to filing suit). By holding that the statute of limitations was tolled during the pendency of appellant's claim, we avoid the injustice of penalizing appellant for administrative delay by shortening the period for which back pay is recoverable. This result comports with the federal decisions which have addressed this issue in the context of Title VII. *See, e.g., Sledge v. J.P. Stevens & Co.,* 585 F.2d 625 (4th Cir.1978), *cert. denied* 440 U.S. 981, 99 S.Ct. 1789, 60 L.Ed.2d 241 (1979); *Equal Employment Opportu-*

---

**1.** The trial court did not, as appellant argues, violate the law of the case doctrine by considering respondents' statute of limitations defense since the merits of such defense have not been previously litigated on appeal. *See Mattson v.*

*Underwriters at Lloyds of London,* 414 N.W.2d 717 (Minn.1987); *Lange v. Nelson–Ryan Flight Service, Inc.,* 263 Minn. 152, 116 N.W.2d 266 (1962), *cert. denied* 371 U.S. 953, 83 S.Ct. 508, 9 L.Ed.2d 500 (1963).

nity Commission v. Enterprise Association of Steamfitters Local No. 638, 542 F.2d 579 (2nd Cir.1976), cert. denied 430 U.S. 911, 97 S.Ct. 1186, 51 L.Ed.2d 588 (1977); Equal Employment Opportunity Commission v. Detroit Edison Co., 515 F.2d 301 (6th Cir.1975), vacated on other grounds in light of International Brotherhood of Teamsters v. United States, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977); United States v. Georgia Power Co., 474 F.2d 906 (5th Cir.1973), vacated on other grounds in light of Pullman–Standard v. Swint, 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982); see also Albemarle Paper Co. v. Moody, 422 U.S. 405, 420 n. 13, 95 S.Ct. 2362, 2373 n. 13, 45 L.Ed.2d 280 (1975) (noting that Congress, in amending Title VII, rejected a provision limiting back pay liability to a date two years prior to filing a complaint in court in favor of a substantially more liberal limitation, i.e., a date two years prior to filing a charge with the E.E.O.C.).

Appellant filed her claim with the Department on October 30, 1980, and is therefore entitled to back pay from October 30, 1978, in an amount equal to the difference in pay between what she actually has earned and what she would have earned if she had been classified as a deputy assessor under the 1980 union agreement. Appellant is also entitled to interest on the wages she has lost since October 30, 1978. See State v. Douglas County, 347 N.W.2d 541 (Minn.Ct.App.1984). Treble and punitive damages, as well as damages for mental anguish or suffering, are also allowable at the trial court's discretion. See Minn. Stat. § 363.071, subd. 2 (Supp.1987). Finally, appellant is entitled to immediate reclassification to the position of deputy assessor, at the Step E pay level. See id.

3. Attorney Fees. The trial court did not address appellant's claim for attorney fees, apparently determining that an award of attorney fees was inappropriate in view of its holding that appellant's claim for damages was time-barred.

■ Minn.Stat. § 363.14 (1986) provides the authority for allowing attorney fees in cases brought under the Minnesota Human Rights Act. Subdivision 3 states that:

In any action or proceeding brought pursuant to this section the court, in its discretion, may allow the prevailing party, other than the department, a reasonable attorney's fee as part of the costs.

Because appellant has finally prevailed on a substantial portion of her claims, we direct the trial court to address the issue of reasonable attorney fees allowable under section 363.14, subd. 3. The reasonableness of appellant's attorney fees request, in terms of hours billed and hourly rate, is undisputed. An increased lodestar adjustment may also be appropriate based on the difficulty of the case, results obtained, contingent nature of results, and quality of representation. See Jorstad v. IDS Realty Trust, 643 F.2d 1305 (8th Cir.1981); Lindy Brothers Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp., 540 F.2d 102 (3rd Cir.1976). At the same time, a reduction in fees is justified, as appellant's attorney concedes, since appellant was not successful on all her theories of discrimination in this case. See Anderson v. Hunter, Keith, Marshall & Co., 417 N.W.2d 619, 630 (Minn.1988) (citing Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983)).

Appellant may also petition for additional attorney fees pursuant to Minn.R.Civ.App. P. 127. See Anderson v. Hunter, Keith, Marshall & Co., 401 N.W.2d 75, 83 (Minn. Ct.App.1987), rev'd in part on other grounds 417 N.W.2d 619, 628 (Minn.1988).

## DECISION

We reverse the trial court's decision that appellant's claim for damages is time-barred. On remand, the trial court is instructed to enter a judgment in appellant's favor for damages and attorney fees in accordance with this opinion.

REVERSED AND REMANDED.