**Renja SIGURDSON, Respondent,**

v.

**ISANTI COUNTY, et al., Petitioners, Appellants.**

**No. C2–88–1460.**

Supreme Court of Minnesota.

Nov. 17, 1989.

Richard A. Beens, Scott M. Leffen & Munstenteiger, Anoka, for appellants.

David A. Singer, Ltd., St. Louis Park, for respondent.

SIMONETT, Justice.

This case asks whether defendants' gender discrimination was a continuing violation so that the time for filing a complaint was extended beyond the prescribed statute of limitations. We agree with the court of appeals that the doctrine of law of the case does not preclude consideration of this issue and that the discrimination was a continuing violation. We affirm.

This is the third appeal in this protracted litigation. We pick up our story at *Sigurdson* II, the second appeal.[1] There the court

---

1. In *Sigurdson* I, the court of appeals, in a split decision, affirmed the trial court's findings of no gender discrimination, but this court, on further review, reversed and remanded for the

of appeals reversed the trial court in part, ruling that one of plaintiff's several discrimination claims had been proven. *Sigurdson v. Isanti County*, 408 N.W.2d 654 (Minn.App.1987). We denied the county's petition for further review. *See* order dated August 19, 1987. The case then returned to the trial court for a determination of damages. The trial court, however, again denied plaintiff relief, this time ruling that the discrimination claim was time-barred. Once again plaintiff has appealed.

In this third appeal, *Sigurdson* III, the court of appeals has reversed the trial court, ruling that plaintiff's claim is not time-barred and again remanding to the trial court for the awarding of damages. *Sigurdson v. Isanti County*, 433 N.W.2d 910 (Minn.App.1988). We granted the county's petition for further review.

We have granted review to consider the "continuing violation" doctrine as it applies to the statute of limitations in discrimination cases. Whether or not there was gender discrimination against Ms. Sigurdson is no longer an issue. *Sigurdson* II decided there was. We did not grant further review in that second appeal; consequently, *Sigurdson* II's ruling finding discrimination in failure to promote plaintiff is the law of this case. *See* Part I, *infra*. Only the time-bar issue remains. To deal with this issue, we first must identify and understand the precise discrimination sought to be time-barred.

In the spring of 1976, the Isanti County Assessor's office consisted of an assessor (Aaron Boettcher), three "deputy assessors," and several "clerks." One of the clerks was plaintiff Renja Sigurdson who aspired to being a deputy assessor. In

April 1976, deputy assessor Duane Johnson quit, leaving Curtis Becker and Dean Boettcher as the only deputy assessors. In May 1979, "chief deputy assessor" Dean Boettcher quit, creating a second vacancy. In September 1979, Sigurdson was allowed to do field appraising, even though almost 3 years earlier, in December 1976, Sigurdson had qualified to do appraisals and even though during this time period there was always at least one vacancy for the position of deputy assessor.

When Sigurdson went in the field to appraise in September 1979, the union contract for county employees was being negotiated. In March 1980 the union contract was executed, retroactive to August 1979. Pursuant to a job study commissioned by the county, the union contract designated three job classifications in the assessor's office, namely, deputy assessor, property appraiser, and office clerical. The salary schedule for deputy assessors was higher than for property appraisers. Sigurdson was designated a "property appraiser" under the union contract and given a lump sum payment to cover her pay increase as a property appraiser retroactive to September 1979. Sigurdson claimed, however, that she should have been allowed to do field appraising from December 1976, as she was then qualified and there was an opening. She also claimed she should have been made a deputy assessor.

In *Sigurdson* II, 408 N.W.2d at 661, the court of appeals ruled that "an opening for a deputy assessor existed after April 1976, that Sigurdson was qualified to fill it as of December 1976 and that she was wrongfully denied this opportunity until the fall of 1979."[2] On remand, the trial court noted

---

trial court to reconsider its findings under a *McDonnell Douglas* analysis. *See Sigurdson v. Isanti County*, 363 N.W.2d 476 (Minn.App.1985), *reversed and remanded*, 386 N.W.2d 715 (Minn. 1986).

On remand the trial court reconsidered and again found no discrimination. The second appeal was an appeal from these reconsidered findings of the trial court.

**2.** The appeals panel found that Sigurdson had been wrongfully denied advancement because of gender, a finding that it substituted for the

trial judge's finding of no discrimination. The evidence on this point was hotly disputed. The county assessor remarked that "if I was to work with one [a woman] for three months out of the year, every day, I guess I wouldn't have appreciated it much." In the spring of 1979, the county assessor said he intended to hire two men to fill the then two vacancies for field appraisal work. We had earlier characterized these remarks as "seemingly" discriminatory. *Sigurdson*, 386 N.W.2d at 721 (Minn.1986). On the other hand, there was evidence that plaintiff was "an extremely difficult employee to supervise." *Si-*

that the court of appeals had found the gender discrimination to exist "until the fall of 1979." Sigurdson, however, did not file her complaint with the Department of Human Rights until October 30, 1980, long after the 6–month statute of limitations had expired. *See* Minn.Stat. § 363.06, subd. 3 (1980), since amended to increase the limitation period to 1 year. Act of April 26, 1988, ch. 660, § 6, 1988 Minn. Laws 921, 922. It is this ruling that gives rise to this current appeal.

In *Sigurdson* III, now before us, the court of appeals stated the trial judge had "misconstrued" the nature of the sex discrimination violation that it had found in the prior appeal. 433 N.W.2d at 913. The panel explained that although plaintiff was allowed to do field work in September 1979, her salary was never increased to reflect her promotion. Further, said the appeals panel, the work plaintiff was doing as a field appraiser was "identical" to the job duties of the male deputy assessors, *id.*, a finding that had already been made in *Sigurdson* II where the panel had found Sigurdson was qualified to be a deputy assessor. Consequently, concluded the panel, the county's failure to eliminate the salary discrepancy was a "continuing discriminatory practice" which extended the statute of limitations so that plaintiff's complaint was timely filed. *Id.* The panel remanded the case to award damages.[3]

In other words, the gender discrimination consisted of the county's refusal to promote Sigurdson to the position of deputy

assessor with a deputy assessor's salary, a discrimination which was not cured in September 1979 by allowing Sigurdson to do field appraising nor was it cured by promoting Sigurdson to property appraiser in March 1980.[4]

The real culprit in this case, it seems to us, has been the county's job classification system or, more accurately, the lack thereof. There is a suggestion in the record that a deputy assessor was supposed to have some managerial or supervisory duties, but, in fact, this is not how the office operated. Both Curtis Becker and Aaron Boettcher testified that the title "deputy assessor" held no special significance; anyone who did assessing, who went out in the field to appraise, was referred to as a deputy assessor—at least until Sigurdson was sent out in the field. When the county advertised for a deputy assessor in 1975, it simply said: "Isanti County is in need of a full-time Deputy Assessor. Requires someone with assessing experience. Some mathematical ability * * *." Not until March 1980 was the position of "property appraiser" created, but even then the new job classification system contained no job descriptions for the classifications.[5] Curtis Becker may have had more experience assessing, but insofar as his duties as a deputy assessor were concerned, he and Renja Sigurdson, once she was allowed to do field appraising, performed the same duties. The conclusion is inescapable that, as the court of appeals concluded, Sigurdson was doing

---

gurdson I, 363 N.W.2d at 483 (Minn.App.1985). See also Justice Yetka's dissent herein. In any event, as noted, the issue of whether plaintiff was denied advancement because of gender bias is behind us, put to rest in *Sigurdson* II.

**3.** The court of appeals ruled that plaintiff is entitled to back pay for the 2 years prior to the filing date of her complaint, hence back pay from October 30, 1978, to October 30, 1980. Plaintiff was also to be reclassified immediately to the job position of deputy assessor at the Step E pay level.

**4.** Sigurdson was designated a Class A Property Appraiser under the 1980 contract, receiving a salary of $11,016. The county classified Curtis Becker, who had just over 4 years of assessing experience, as a Class D Deputy Assessor under

the same contract at a salary of $14,372. Yet Becker and Sigurdson have shared the same duties since 1979. At date of trial in 1984, when Sigurdson had 4 years of assessing experience, the county still had not promoted her to Deputy Assessor.

**5.** The trial judge made findings on what each person in the assessor's office did prior to September 1979, but; in view of the confusion in the record, understandably did not attempt to match job titles with duties. Prior to March 1980 there was no job title for someone doing field appraisal work other than deputy assessor. After March 1980, there were no job descriptions distinguishing a deputy assessor from a property appraiser. As a result, a job title meant whatever the county assessor chose to make it mean.

the same work as the male deputy assessors but on a lower salary schedule. The county's claim that Sigurdson was only qualified for a lower job classification was pretextual; as we have already noted, it is the law of this case, established in *Sigurdson* II and not reviewable here, that the discrimination was gender motivated.

It is against this factual background that we now take up the time-bar issue.

### I.

Plaintiff argues that Isanti County is precluded from asserting the statute of limitations defense because of the doctrine of law of the case. While plaintiff presents this argument as an "alternative" ground for affirmance, it is really a threshold issue.

In *Sigurdson* II the appeals panel found gender discrimination in failure to advance plaintiff to the job position to which she was entitled and remanded for assessment of damages. Plaintiff argues this decision precluded the trial court, on remand, from entertaining defendant's statute of limitations defense. Not so.

■ Law of the case applies when the appellate court has ruled on a legal issue and remanded for further proceedings on other matters. The issue decided becomes "law of the case" and may not be relitigated in the trial court or reexamined in a second appeal. *Mattson v. Underwriters at Lloyds*, 414 N.W.2d 717, 719–20 (Minn. 1987). Such is the case here, with the court of appeals' determination finding gender discrimination in advancement. But, unlike res judicata, the doctrine of law of the case "applies only to litigated issues and does not reach issues which could have been but were not litigated." *Lange v. Nelson–Ryan Flight Service, Inc.*, 263 Minn. 152, 156, 116 N.W.2d 266, 269 (1962).

■ Here, although the statute of limitations issue could have been reached in either *Sigurdson* I or II, it was not. While the defendant county had pled and argued the statute of limitations defense at the first trial, the trial court never made a ruling. The trial court saw no need to make a ruling because it had found no discrimination.[6] Here, too, unlike *Mattson*, neither *Sigurdson* I nor II finally concluded the lawsuit. On remand after *Sigurdson* II, the trial court had the same case before it with an unresolved statute of limitations issue, *i.e.*, with a statute of limitations issue on which there was no "law of the case." The county is entitled to its day in court on its asserted, undecided defense claim.

### II.

At the time Sigurdson filed her complaint with the Commissioner of Human Rights, the statute read: "A charge of an unfair discriminatory practice must be filed within six months after the occurrence of the practice." Minn.Stat. § 363.06, subd. 3 (1980). Sigurdson was allowed to do appraising in September 1979. She did not, however, file her charge until October 30, 1980, over 6 months later.

It seems to us, however, the more critical date is March 1980. It was then that Sigurdson was wrongfully assigned the job classification of property appraiser. While Sigurdson had been assessing in the field since the previous September, her job classification was not officially fixed until March 1980, when the new union contract was executed, and at which time she was paid retroactive to September 1979, as a "property appraiser." But even if the discrimination is said to consist of the act of job misclassification occurring in March 1980, Sigurdson's complaint, filed October 30, 1980, is still a month too late.

If, however, the county's discrimination was a continuing violation, plaintiff may avoid the running of the statute of limitations. We recognized the continuing violation doctrine in *Brotherhood of Ry. and S.S. Clerks, Freight Handlers & Station Employees v. State by Balfour*, 303 Minn. 178, 229 N.W.2d 3 (1975). There two black

---

6. It should be remembered that when this case was tried plaintiff asserted, on a complex record, a number of different claims of discrimination. Each claim would have involved a different statute of limitations issue.

plaintiffs were denied union membership because they were classified as porters although they did the same work as higher paid janitors. In 1958 and 1960, the union contract was changed to include plaintiffs as union members but they remained classified as porters, their pay was reduced, their seniority was dated from the date of the contract, and, if they transferred out of their job classification, they would lose their seniority. Plaintiffs did not file charges until 1966. Nevertheless, we concluded that the discriminatory acts were "continuing in nature" and held plaintiffs' claims were not time-barred. *Id.* at 193, 229 N.W.2d at 12. We said the restrictions on job rights and the lesser pay had a "continuing effect." *Id.* at 187, 229 N.W.2d at 9. *Cf. Hubbard v. United Press International, Inc.*, 330 N.W.2d 428, 441 n. 11 (Minn.1983).

In one sense, a discriminatory act always has some continuing consequences. There is always the effect of the loss of "what should have been." But if a mere continuing effect will extend the limitation period, the statute of limitations would be effectively emasculated. This cannot be. The United States Supreme Court has struggled with this problem in federal Title VII cases, and we may look to its struggles for guidance.

"Mere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination." *Delaware State College v. Ricks*, 449 U.S. 250, 257, 101 S.Ct. 498, 503, 66 L.Ed.2d 431 (1980). The emphasis is not on mere continuity but "whether any present *violation* exists." *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977) (emphasis original). One must distinguish between discriminatory acts and discriminatory effects; "'[t]he proper focus is upon the time of the *discriminatory acts*, not upon the time at which the *consequences* of the acts became most painful.'" *Lorance v. A T & T Technologies, Inc.*, —— U.S. ——, 109 S.Ct. 2261, 2266, 104 L.Ed.2d 961 (1989) (quoting *Ricks*, 449 U.S. at 258, 101 S.Ct. at 504) (emphasis original).

Isanti County relies particularly on *Evans* and *Lorance*. In *Evans*, plaintiff was wrongfully forced to resign from the airline after her marriage. She did not complain. Four years later she was rehired as a flight attendant (airline policy having changed), but as a new employee, with less pay and loss of her old seniority. Her complaint, filed after her rehiring, was held to be time-barred. Plaintiff's cut in pay and loss of seniority were held to be only consequences of the earlier marital discrimination. In *Lorance*, a 1980 union contract established a new seniority system for persons employed as testers in defendant's plant. Seniority for testers depended on time spent as a tester; before, seniority had been plant-wide. On its face, the new system was neutral, but in fact it discouraged women from seeking the traditionally male tester jobs. Not until 1982, however, when the women plaintiffs received demotions they would not have received if the former seniority system had remained in place, did plaintiffs file charges. The court held the claims time-barred.

On the other hand, plaintiff cites *Bazemore v. Friday*, 478 U.S. 385, 106 S.Ct. 3000, 92 L.Ed.2d 315 (1986), where the continuing violation doctrine was held to extend the statute of limitations. There the state agricultural extension service merged two previously separate, racially segregated branches but continued to pay some black employees less than the white employees. The court held that the merger perpetuated the prior racial discrimination and each week's pay check was an actionable wrong. In *Bazemore*, however, the reorganization plan was facially discriminatory, while in *Lorance*, as the *Lorance* court pointed out, the new seniority system was facially neutral.

Arguably, Isanti County's failure to advance Sigurdson to deputy assessor in either September 1979 or March 1980 was a single discriminatory act or occurrence, but we think not. This case is more like *Bazemore* and our *Brotherhood* case. The discrimination here is not loss of seniority (which receives special treatment under Title VII), as in *Lorance*. Once a facially neutral seniority system is put in place it is

difficult for an employer to change it because a change affects not only the complaining employees but other employees as well. But Sigurdson's complaint is based on failure to be put in the proper job classification. The county's job classification system, with its lack of job descriptions, is not so much facially neutral as facially meaningless. Here plaintiff's assignment as "property appraiser" under the 1980 union contract simply left undisturbed the gender discrimination against plaintiff that had been occurring since December 1976. The wrongful denial of plaintiff's claim to be a deputy assessor with a deputy assessor's pay was a continuing act, and hence a continuing violation. In the case of *Lorance,* the facially neutral seniority system treated men and women the same, and the discrimination was in the single act of adopting the seniority system, not in the subsequent effect of that adoption. In this case, on the other hand, the discrimination lies in the continuing act of failing to promote Sigurdson to deputy assessor with a deputy assessor's pay, a failure which continued notwithstanding that she was allowed to do appraising in September 1979 and notwithstanding the adoption of the so-called job classification system in March 1980.

We hold, therefore, that the gender discrimination in failing to advance plaintiff is a continuing violation and, therefore, her claim filed October 30, 1980, is not barred by the statute of limitations. Plaintiff has asked for attorney fees in this court for *Sigurdson* I and her current appearance. We deny attorney fees for *Sigurdson* I but award $1,250 for attorney fees in this appeal.

Affirmed.

YETKA, Justice (dissenting).

I dissent because I believe that this case is an example of how persistent litigation can so warp the facts over a period of time that a travesty is imposed on a small rural county in Minnesota. On three separate occasions, the court of appeals has shifted position; thus giving rise to this protracted litigation. In addition, the court of appeals has improperly engaged in factfinding, and its findings of fact are clearly erroneous.

The record in this case reveals that, at every initial stage, no discrimination was found. A union grievance was denied, the Department of Human Rights found no discrimination, and the trial court found no discrimination. Moreover, in the first appeal, the court of appeals affirmed the trial court. On appeal to this court, we remanded not so much because we disagreed with the trial court's finding of no discrimination, but because we believed that the trial court had not properly applied the *McDonnell Douglas* analysis mandated by earlier decisions of this court.

On remand, the trial court again found no discrimination; but on the second appeal, the court of appeals reversed its earlier decision and found that an opening for deputy assessor had existed for some time prior to the fall of 1979 and that plaintiff was wrongfully denied the opportunity to fill it until the fall of 1979. The case was remanded a second time. The trial court then found that any claim, if it existed, was barred by the statute of limitations. Nevertheless, on the third appeal, the court of appeals now says that it meant that there was a continuing discrimination even after the fall of 1979; therefore, the statute of limitations does not bar the suit. I believe this holding to be clearly erroneous and would reverse the court of appeals for the following reasons:

1. I pointed out in my partial dissent in the first appeal that, at some point, litigation must come to an end; yet, here we are on another appeal to this court. No discrimination was found at any level until the second appeal to the court of appeals. True, an advisory jury to the trial court in the first trial found some discrimination, but one has to wonder whether this finding was based solely on the sexist remarks of the county assessor rather than on any discrimination in *action.* This finding of the advisory jury, though rejected by the trial court, was resurrected by the court of appeals and will now cost Isanti County very dearly.

2. In my opinion, the majority decision lacks foundation both in fact and law. When the plaintiff was first hired, she was hired as a stenographer and had only a high school education. Her subsequent training as a field appraiser was at county expense. The record shows that she was a difficult person with whom to work. She frequently refused directives from her boss and was disciplined by him on several occasions. At one time, she left the office considering herself fired over differences with the county assessor, but was allowed to return. In the year she was hired, two deputy assessors—Curtis Becker and Duane Johnson—were also hired. Their educational qualifications were far superior to those of Sigurdson; they were both college graduates and one of them had experience as a teacher and high school principal. Both had pertinent experience in farm work and knowledge of local farm values.

There is no question that, on many occasions, each employee in the office could be engaged in similar duties, which is typical in a small rural county with few employees in each department. The department head does not have the luxury of rigidly defining the job description for each person. People are expected to be versatile and able to perform a number of tasks.

As in the situation here, when difficult appraisal situations arose, decisions had to be made by those with superior qualifications. Curtis Becker, with whom Sigurdson insists she should be compared, and Duane Johnson had college degrees, farm backgrounds and knowledge of rural buildings and values. In April 1976, Duane Johnson quit, leaving a deputy assessor position open. Is it discrimination if a county assessor does not fill this vacancy with a person of Sigurdson's qualifications if the assessor believes the qualifications to be inadequate? I think not. A supervisor must be given some discretion in hiring, firing and placing people in positions for which they are best qualified. True, the county did not have a good job classification system, but how many small counties do? If the assessor here had specifically defined each person's responsibilities and asked Sigurdson to perform deputy asses-

sor's duties temporarily in the absence of a deputy, would she have helped out? I believe the answer would be "no" because, on one occasion, in a similar situation, Sigurdson had asked her supervisor why she was being asked to do the requested work when she had been previously led to believe that she was not qualified to do it. We must also bear in mind that Sigurdson was elevated in job description and pay to that of a field appraiser when she completed her studies. However, that does not entitle the court to hold that, by becoming a field appraiser, she was entitled to demand the post of deputy assessor as well.

3. The majority's decision opens up the possibility of many other possible claims of discrimination being brought years and even decades after the claimed act of discrimination took place. This is the very reason the discrimination statute contains a limitations period. Sigurdson knew for almost 2 years—from 1978 to 1980—that the union was negotiating a contract with the county. Though she should have known that the contract was executed in March 1980, she waited more than 6 months before bringing any claim. When she did, it was after the statute of limitations expired.

4. Of course, the courts must be diligent in eliminating all unfair forms of inequality. However, it is one thing to promote equality; it is quite another for an appellate court to substitute itself for a trial court and engage in selective interpretation in order to find "facts" which constitute discrimination. Such conduct promotes inequality rather than equality. The majority's decision will not promote equality, but rather gives plaintiff preferential treatment simply because of her sex.

Moreover, the second decision of the court of appeals indicated that the advisory jury's damage recommendation should be considered as a guide by the trial court. By holding that the act of discrimination was a continuing violation for over a dozen years, the majority's reasoning now exposes the county to damages which could far exceed the jury award and create a tremendous financial burden for a small county to bear where the facts do not, in my opinion,

justify a conclusion of any discrimination, a finding supported by the union, the Department of Human Rights and the trial court.

KELLEY, Justice (dissenting).

For the reasons expressed by Justice Yetka in paragraphs he numbered as 1, 2, and 3, I join his dissent.