# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3510

_____

Taxi Connection & Robin K. Gamradt,   \*
   \*
       Appellants,   \*
   \*      Appeal from the United States
v.   \*      District Court for the District of
   \*      Minnesota.
Dakota, Minnesota & Eastern   \*
       Railroad Corporation,   \*
   \*
       Appellee.   \*

_____

Submitted: November 12, 2007
Filed: January 22, 2008

_____

Before WOLLMAN, JOHN R. GIBSON, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Taxi Connection and Robin K. Gamradt appeal from the district court's[1] dismissal of their claims against Dakota, Minnesota & Eastern Railroad Corporation (DM&E) alleging: (1) reprisal, business, and gender discrimination in violation of the Minnesota Human Rights Act (MHRA), and (2) breach of contract and promissory estoppel. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

_____

[1]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota.

The complaint alleges the following facts. In December 2001, Gamradt, the owner of Taxi Connection, and DM&E orally agreed that it would primarily use Taxi Connection for taxi services within a 25-mile radius of the Waseca depot. In summer 2003, a DM&E employee began frequently referring to a female Taxi Connection driver as "shithead"; he did not call male drivers similar names. The driver complained, but except for a temporary break, the behavior continued into December 2004. In December 2004, Gamradt reported the behavior to Tracy Lund, DM&E's director of Human Resources, who said she would investigate. A supervisor at DM&E contacted Gamradt that day to inform her "angrily" that she had handled the situation incorrectly.

On December 14, 2004, DM&E terminated its services with Taxi Connection. In January 2005, DM&E's president told Gamradt that DM&E would investigate and resolve her complaint within two weeks and that he had a low tolerance for retaliation. Lund confirmed that two weeks was a reasonable time period. Despite these assurances, DM&E never resolved the complaint, and Lund stopped discussing it with Gamradt.

From January 2005 to May 2006, Gamradt made numerous attempts to resume doing business with DM&E. However, DM&E continually refused to use Taxi Connection.

On May 17, 2006, Taxi Connection and Gamradt sued DM&E. DM&E moved to dismiss the MHRA counts for lack of subject matter jurisdiction, and the breach of contract and promissory estoppel counts for failure to state a claim. The district court granted DM&E's motion, finding that the MHRA claims were time-barred, and that the complaint did not allege the elements for breach of contract or promissory estoppel. Taxi Connection and Gamradt appeal.

This court reviews "de novo the grant of a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) and the grant of a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *OnePoint Solutions, LLC v. Borchert*, 486 F.3d 342, 347 (8th Cir. 2007) (internal citations omitted).

I.

Under the MHRA, unfair discriminatory practice claims must be filed within one year of the occurrence of the practice. **Minn. Stat. § 363A.28, subdiv. 3.** The continuing violation doctrine, applicable to MHRA claims, allows a plaintiff to avoid the running of the statute of limitations. *Sigurdson v. Isanti County*, 448 N.W.2d 62, 66 (Minn. 1989). Thus, "each individual discriminatory act which is part of a continuing violation triggers anew the time period for reporting the entire pattern of discrimination, 'as long as at least one incident of discrimination occurred within the limitations period.'" *Smith v. Ashland, Inc.*, 250 F.3d 1167, 1172 (8th Cir. 2001), *quoting Treanor v. MCI Telecomms. Corp.*, 200 F.3d 570, 573 (8th Cir. 2000). The doctrine often applies to hostile work environment claims, where the discriminatory practice may consist of many acts not individually actionable. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115-16 (2002) (discussing the continuing violation doctrine for Title VII claims); *Sigurdson*, 448 N.W.2d at 67 (in deciding continuing violation issues, Minnesota courts may look to Supreme Court guidance in Title VII cases). The continuing violation doctrine does not encompass discrete discriminatory acts, such as termination, failure to promote, denial of transfer, or refusal to hire, which are individually actionable. *Nat'l R.R. Passenger Corp.*, 536 U.S. at 113-14. The court "must distinguish between discriminatory acts and discriminatory effects; the proper focus is upon the time of the *discriminatory acts*, not upon the time at which the *consequences* of the acts became most painful." *Sigurdson*, 448 N.W.2d at 67 (internal citations and quotation marks omitted; emphasis in original). "The court must determine whether a present violation exists, rather than whether there are continuing effects from earlier . . . decisions." *Kohn v.*

***City of Minneapolis Fire Dep't***, 583 N.W.2d 7, 11 (Minn. Ct. App. 1998), *citing* ***United Air Lines, Inc. v. Evans***, 431 U.S. 553, 558 (1977).

The district court found that the alleged discriminatory practice occurred on December 14, 2004, when DM&E terminated the contract, and therefore the MHRA claims filed on May 17, 2006, were time-barred. Taxi Connection and Gamradt argue that their MHRA claims are timely under the continuing violation doctrine, reasoning that a new violation occurs each time DM&E refuses to use Taxi Connection.

On the facts alleged, refusing to use Taxi Connection is a consequence of the alleged discriminatory act, termination of the contract. DM&E's use of other taxi companies is not part of a continuing discriminatory practice or a series of related discriminatory acts. The alleged discrimination was a discrete and singular act, similar to termination of an employee, and was complete on December 14, 2004. *See* ***Nat'l R.R. Passenger Corp.***, 536 U.S. at 114; *cf.* ***Kohn***, 583 N.W.2d at 11-12 (repeated failure to promote, based on a discriminatory eligibility list, was a continuing violation). DM&E's refusals to use Taxi Connection are the consequences of the act of discrimination and do not fall within the continuing violation doctrine. *See* ***Sigurdson***, 448 N.W.2d at 67. The MHRA claims were properly dismissed as untimely.

## II.

In analyzing a 12(b)(6) motion, this court assumes all factual allegations in the complaint are true, but "the complaint must contain sufficient facts, as opposed to mere conclusions, to satisfy the legal requirements of the claim to avoid dismissal." ***Levy v. Ohl***, 477 F.3d 988, 991 (8th Cir. 2007) (internal citations and quotation marks omitted). "A motion to dismiss should be granted if 'it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief.'" ***Koehler v.***

***Brody***, 483 F.3d 590, 596 (8th Cir. 2007), *quoting **Knapp v. Hanson***, 183 F.3d 786, 788 (8th Cir. 1999).

Taxi Connection and Gamradt assert that, in January 2005, a contract was formed and breached when DM&E promised to investigate and resolve Gamradt's complaint within two weeks. "To establish a breach-of-contract claim, a plaintiff must show that (1) a contract was formed; (2) the plaintiff performed any conditions precedent; and (3) the defendant breached the contract. The formation of a contract requires communication of a specific and definite offer, acceptance, and consideration." ***Commercial Assocs., Inc. v. Work Connection, Inc.***, 712 N.W.2d 772, 782 (Minn. Ct. App. 2006) (internal citations omitted). Here, there was no specific and definite offer, and thus no contract was formed. *See **Pine River State Bank v. Mettille***, 333 N.W.2d 622, 626 (Minn. 1983) (employee handbook may be considered an offer if it is definite and more than general policy statements). When DM&E informed Gamradt that it would investigate and resolve her complaint, it was responding to her complaint, not specifically and definitely offering to enter a contract. The breach of contract claim was properly dismissed; Taxi Connection and Gamradt cannot prove any set of facts entitling them to relief.

Alternatively, Taxi Connection and Gamradt contend that, under promissory estoppel, DM&E should be accountable for its promises to investigate and resolve Gamradt's complaint. To establish promissory estoppel, Taxi Connection and Gamradt must show: (1) DM&E made a clear and definite promise; (2) DM&E intended to induce reliance and Taxi Connection and Gamradt did rely to their detriment; and (3) enforcement of the promise is necessary to prevent injustice. ***Martens v. Minn. Mining & Mfg. Co.***, 616 N.W.2d 732, 746 (Minn. 2000). The detriment alleged is that DM&E made promises to investigate and resolve the complaint to induce Taxi Connection and Gamradt to postpone their lawsuit until the statute of limitations had expired. Critically, DM&E explicitly limited any promises to two weeks, nowhere near the year in which Taxi Connection and Gamradt had to

file their claims. Taxi Connection and Gamradt cannot establish the second element. The promissory estoppel claim was properly dismissed; Taxi Connection and Gamradt cannot prove any set of facts entitling them to relief.

The judgment of the district court is affirmed.

_____