**In the Matter of the Petition of DE LARIA TRANSPORT, INC. to Redesignate the Petroleum Authority issued under Irregular Route Common Carrier Permit No. 24982 to a Certificate of Public Convenience and Necessity as a Petroleum Carrier Under Petroleum Carrier Certificate No. 182.**

**No. C1–88–445.**

Court of Appeals of Minnesota.

Aug. 23, 1988.

William E. Flynn, Mary P. McConnell, Lindquist & Vennum, Minneapolis, for relator Indianhead Truck Line, Inc.

Hubert H. Humphrey, III, Atty. Gen., Jon Erik Kingstad, Sp. Asst. Atty. Gen., St. Paul, for respondent Minnesota Transp. Regulation Bd.

Grant J. Merritt, Grant Merritt & Associates, Ltd., Minneapolis, for respondent De Laria Transport, Inc.

Heard, considered and decided by NORTON, P.J., and HUSPENI and KALITOWSKI, JJ.

### OPINION

KALITOWSKI, Judge.

Relator Indianhead Truck Line, Inc. seeks review of a decision by the respondent Minnesota Transportation Regulation Board which granted a request by respondent De Laria Transport, Inc. to redesignate a portion of its irregular route common carrier permit as a petroleum carrier certificate. Relator claims the Board acted outside its statutory authority in granting De Laria's request for redesignation. We agree, and reverse.

### FACTS

In April 1958, the Minnesota Railroad and Warehouse Commission, now the Minnesota Transportation Regulation Board (Board), ordered that George De Laria be issued an irregular route common

carrier permit (IRCC permit), authorizing the transport of petroleum products in bulk within the Twin Cities and contiguous cities and villages.

In November 1962, the Board ordered that George De Laria's IRCC permit be extended to allow the transport of certain non-petroleum products to all points in Minnesota from certain designated points of origin. Thereafter, George De Laria's IRCC permit was transferred to De Laria Transport, Inc. (De Laria), which obtained the same authority to transport both petroleum and non-petroleum products.

On April 24, 1987, De Laria filed a petition with the Board, requesting that the portion of its IRCC permit allowing the transport of petroleum products be redesignated as a petroleum carrier certificate (PC certificate). De Laria intended that the portion of its IRCC permit authorizing the transport of non-petroleum products remain intact. However, on May 8, 1987, the Board indicated to De Laria that it would not approve the petition to redesignate only a portion of the IRCC permit as a PC certificate. The Board indicated that any order allowing redesignation from an IRCC permit to a PC certificate would cancel the IRCC permit in its entirety, requiring De Laria to file a petition for a new IRCC permit authorizing the transport of non-petroleum products.

On July 29, 1987, the Board issued two orders. In one order, the Board authorized the issuance to De Laria of a PC certificate, and indicated that once the redesignation became permanent, the remaining portions of De Laria's IRCC permit (relating to non-petroleum products) would be cancelled. The second order authorized De Laria to temporarily lease this PC certificate to Mississippi Transport, Inc. for a period of six months, or until the Board issued an order on the permanent transfer of the certificate.

On July 31, 1987, the Board published notice of De Laria's petition for redesignation of the portion of its IRCC permit regulating petroleum products and separate petition seeking a new IRCC permit for the transport of non-petroleum prod-

ucts. The notice set a protest date, and on August 20, relator Indianhead Truck Line, Inc. mailed to the Board a notice of intent to protest De Laria's petition for redesignation.

Instead of a hearing, the parties agreed to submit briefs on the question whether the Board had the authority to grant De Laria's petition for redesignation of its IRCC permit as a PC certificate. After consideration of the briefs and arguments of the parties, an administrative law judge (ALJ) concluded that no statute or rule prohibited the Board from redesignating De Laria's IRCC permit as a PC certificate. The Board adopted the ALJ's conclusions and recommendations.

## ISSUE

Did the Minnesota Transportation Regulation Board exceed its statutory authority by allowing the redesignation of De Laria's irregular route common carrier permit as a petroleum carrier certificate?

## ANALYSIS

With limited exceptions, a motor carrier may not operate in Minnesota without either a certificate or a permit. Minn.Stat. § 221.021 (1986). Minn.Stat. § 221.061 (1986) requires an operating certificate for regular route common carriers or petroleum carriers. A "petroleum carrier" is defined as

[a]ny person engaged in the business of transporting for hire over the public highways petroleum products in bulk * * * *but it shall not include the transportation of such products between points or places wholly within a city, or wholly within a single group of contiguous cities.*

Minn.Stat. § 221.011, subd. 10 (1986) (emphasis supplied). Under this definition, De Laria was not a "petroleum carrier," since it was only authorized to transport petroleum products "between points or places within the Twin Cities and contiguous cities and villages."

Operating authority for motor carriers which are not "petroleum carriers" or reg-

ular route common carriers is governed by Minn.Stat. § 221.111 (1986):

> Motor carriers other than regular route common carriers, petroleum carriers, and local cartage carriers, shall obtain a permit in accordance with section 221.121, including irregular route carriers * * *.

Accordingly, De Laria's authority to operate as an irregular route carrier was under this type of IRCC permit, and not under a PC certificate.

The statutes governing permits and certificates differ in several respects, including the means of assigning or transferring such permits or certificates. The parties concede that if De Laria had sought to transfer its IRCC permit to Mississippi Transport, Inc., it would have been unsuccessful:

> [O]nly such operating authority may be granted to the transferee as was actually exercised by the transferor under the transferor's authority within the two-year period immediately preceding the transfer as evidenced by bills of lading, company records, operation records, or other relevant evidence.

Minn.Stat. § 221.151, subd. 1 (1986). In the two-year period prior to 1987, De Laria had not been exercising its authority to transport petroleum products; rather, De Laria had limited its operations to the transport of non-petroleum products.

The statutory provision governing the transfer of PC certificates, on the other hand, does not include the above restriction. Accordingly, De Laria wished to redesignate its IRCC permit as a PC certificate, so that it could transfer its authority to transport petroleum products to Mississippi Transport, Inc. Relator Indianhead Truck Line, Inc. claims that the procedure used by De Laria and authorized by the Board was an unlawful circumvention of Minn.Stat. § 221.151 governing the transfer of IRCC permits.

The ALJ expressed a belief that "a strong argument can be made that there is no legitimate purpose * * * other than avoiding the statutory prohibitions of section 221.151." Nevertheless, the ALJ felt constrained to follow a prior case decided by the Board: *In the Matter of the Petition of Dombrock, Inc. d/b/a Metro Transports, * * * for Redesignation of its IRCC (Irregular Route Common Carrier Permit) No. 42238 to a PC (Petroleum Carrier Certificate) No. 156,* Docket No. IRCC 47238, PC–156/MR–85–348 (Oct. 15, 1986).

In *Dombrock,* the Board granted the petitioner's request to redesignate its IRCC permit as a PC certificate. There, the petitioner wished to avoid another restriction within the statutory provision governing the transfer of IRCC permits:

> [T]he board shall make no order granting the sale or lease of a permit to a person or corporation or association which holds a certificate or permit other than local cartage carrier permit from the Board under this chapter or to a common carrier by rail.

Minn.Stat. § 221.151, subd. 1 (1986). The petitioner in *Dombrock,* seeking a way to avoid the above restriction, requested the Board to redesignate its IRCC permit as a PC certificate. In *Dombrock,* the Board concluded that it had the authority to redesignate Dombrock's authority, reasoning that, for over 20 years, various regulatory agencies had contended that IRCC permits authorizing the transport of petroleum products should have been issued as PC certificates. *Dombrock* noted that the definition of "petroleum carrier" in Minn. Stat. § 221.011, subd. 10 specifically excludes motor carriers who transport petroleum between points or places wholly within a city or wholly within a single group of contiguous cities. The Board concluded, however, that such exclusion was not intended to create two types of operations—one for petroleum transport within municipalities and another for petroleum transport outside of municipalities. Rather, the Board reasoned that the exclusion was created to relieve local carriers hauling petroleum within municipalities from the need to obtain the same broad certificate required of carriers offering country-wide, regional or state-wide service. Thus, the Board concluded that the statute did not preclude Dombrock from exchanging its IRCC per-

mit for a broader PC certificate. *Dombrock* was never appealed.

In the present case, the ALJ concluded that "[t]he *Dombrock* case was similar enough to this case to allow it to stand as administrative precedent for the legality of the redesignation." *See Matter of Whitehead*, 399 N.W.2d 226, 229 (Minn.Ct.App. 1987) (while an administrative agency is not rigidly bound by precedent, it may not abandon such precedent without reason or explanation; otherwise the new decision is considered arbitrary and capricious).

The scope of our review of the Board's decision is governed by the Administrative Procedure Act, which indicates that we may determine whether the decision of the administrative agency is in excess of its statutory authority or jurisdiction. Minn. Stat. § 14.69(b) (1986). When determining whether an administrative agency has jurisdiction to act under its statutes, we need not necessarily defer to the agency's decision; the ultimate question of agency authority to act involves the interpretation of a statute, which is a question of law. *Minnesota Microwave, Inc. v. Public Service Commission*, 190 N.W.2d 661, 664 (Minn.1971).

While Chapter 221 authorizes the Board to issue or transfer IRCC permits or PC certificates, there is no express statutory authority allowing the Board to redesignate an IRCC permit as a PC certificate:

> [The Board] may make such investigations and determinations, hold such hearings, prescribe such rules and issue such orders with respect to the control and conduct of the businesses coming within its jurisdiction as the legislature itself might make but only as it shall from time to time authorize.

Minn. § 174A.02, subd. 1 (1986).

> The Commissioner [of Transportation] shall make *no rules relating to the granting, limiting, or modifying of permits or certificates of convenience and necessity, which are powers granted to the [Transportation Regulation] Board.*

Minn.Stat. § 221.031, subd. 1 (1986).

An administrative agency is a creature of statute and possesses only those powers given to it by the legislature. *Peoples Natural Gas Co. v. Minnesota Public Utilities Commission*, 369 N.W.2d 530 (Minn.1985). In *Peoples*, the court stated:

> The legislature states what the agency is to do and how it is to do it. While express statutory authority need not be given a cramped reading, any enlargement of express powers by implication must be fairly drawn and fairly evident from the agency objectives and powers expressly given by the legislature. "Neither agencies nor courts may under the guise of statutory interpretation enlarge the agency's powers beyond that which was contemplated by the legislative body." *Waller v. Powers Department Store*, 343 N.W.2d 655, 657 (Minn.1984).

*Id.* at 534.

The courts have been consistently reluctant to find implied authority for an agency's actions. For example, in *Petition of Northern States Power Co.*, 414 N.W.2d 383 (Minn.1987), the court held that there was no express statutory authority to support dismissal of NSP's rate case, even though contacts by a member of the Public Utilities Commission with NSP officials had tainted the ratemaking process. In *Great Northern Railway Co. v. Public Service Commission*, 169 N.W.2d 732 (Minn.1969), the court held that the Public Service Commission lacked authority to order a railroad to immediately restore passenger service, stating:

> It is well settled that the powers of a state Commission are special and limited, and they can exercise only such authority as is legally conferred by express provisions of law, or such as is by fair implication and intendment incident to and included in the authority expressly conferred for the purpose of carrying out and accomplishing the objects for which the Commission was created, and that any reasonable doubt of the existence of any particular power in the Commission should be resolved against the exercise of such power.

*Id.* at 735 (quoting *Backus–Brooks Co. v. N.P. Ry. Co.*, 21 F.2d 4, 19 (8th Cir.1927).

We are cognizant of the many difficulties facing administrative agencies when determining and acting within the bounds of their authority set by the legislature. Nevertheless we are unable to find any express authority for the Board's action in converting De Laria's IRCC permit into a PC certificate. Absent such authority, we are compelled to reverse.

## DECISION

Reversed.