STATE of Minnesota DEPARTMENT OF LABOR & INDUSTRY BY the SPECIAL COMPENSATION FUND, Respondent,

v.

WINTZ PARCEL DRIVERS, INC. and George Wintz, Individually, Relators.

No. C2–96–757.

Court of Appeals of Minnesota.

Nov. 26, 1996.

Hubert H. Humphrey, III, Attorney General, Susan C. Gretz, Gilbert S. Buffington, Assistant Attorneys General, St. Paul, for Respondent.

Roger J. Aronson, Rischmiller, Inippel & Aronson, Minneapolis, for Relators.

Considered and decided by PETERSON, P.J., and KALITOWSKI and HARTEN, JJ.

## OPINION

PETERSON, Judge.

The Commissioner of the Department of Labor and Industry issued an order directing relators Wintz Parcel Drivers, Inc. and George L. Wintz to obtain workers' compensation insurance coverage and to refrain from employing any person until coverage was obtained. The order also assessed a penalty for employing persons without providing coverage for workers' compensation. Relators filed a written objection to the order and the Commissioner referred the matter to the Office of Administrative Hearings for an expedited hearing before a compensation judge. Following a hearing, the compensation judge issued an order that reduced the penalty assessed by the Commissioner. In this appeal by writ of certiorari, relators seek review of the order of the compensation judge.

## FACTS

Wintz Parcel Drivers, Inc., a Minnesota corporation, was incorporated in 1988 and began leasing truck and van drivers to transportation companies. Wintz was required to provide workers' compensation insurance for its Minnesota employees. From 1989 through July 1991, Wintz obtained workers' compensation insurance through Minnesota's Assigned Risk Plan (ARP), a pool that provides insurance for employers that cannot obtain insurance from commercial insurers. When setting the price of insurance, the ARP is required to follow a rating structure that commercial insurers are not required to follow. Commercial insurers may allow discounts or deductibles that are not allowed by the ARP.

In August 1991, Wintz merged with a newly created West Virginia corporation, also called Wintz Parcel Drivers, Inc. (Wintz). George Wintz is Wintz's sole owner and stockholder. Wintz obtained extra-territorial workers' compensation insurance coverage in West Virginia for all of its employees, including those in Minnesota. Wintz dropped its workers' compensation coverage with ARP. There were several reasons for merging the Minnesota corporation with the West Virginia corporation: a desire to expand operations; a source of business on the east coast; a promising location for a terminal in West Virginia; and a desire to reduce workers' compensation costs.

The State of Minnesota learned that Wintz's only physical presence in West Virginia consisted of a small office with a computer and one clerical worker. In September 1991, the State of Minnesota advised Wintz that it was not in compliance with Minnesota's workers' compensation requirements.

By June 1992, it had become clear to Wintz that the prospective West Virginia location was unsuitable. In July 1992, West Virginia terminated Wintz's extra-territorial insurance coverage. On November 1, 1992, Wintz obtained a policy of Minnesota workers' compensation insurance from Transamerica Premier Insurance Company (TIG). The policy had a $250,000 deductible, backed by an indemnification agreement and a letter of credit from Wintz. Wintz paid a premium to TIG in the amount of $951,193 for November 1992 to November 1993, exclusive of the deductible.

On November 2, 1992, the State of Minnesota served Wintz a notice of penalty assessment, which assessed a penalty for failing to obtain Minnesota workers' compensation insurance coverage for the period from August 31, 1991 through October 1992. The state divided its penalty into two parts, a penalty in the amount of $5,000 for the period from August 31, 1991 through June 30, 1992, and a penalty in the amount of $6,817,000 for the period from July 1, 1992 through October 31, 1992.

Wintz protested the penalties, and a compensation judge with the Office of Administrative Hearings, Workers' Compensation Section, conducted a five-day hearing. Following the hearing, the judge issued findings and a memorandum, concluding that she lacked jurisdiction over the state's claim for a penalty for the period from August 31, 1991 through June 30, 1992 because, under the law in effect at that time, a penalty could only be recovered in a civil action. But the judge concluded that Wintz should be assessed a penalty in the amount of $1,219,220 for the July 1, 1992 through October 31, 1992 period. The judge based this determination on the amount that Wintz would have paid to the ARP for workers' compensation insurance coverage during that period, plus a "pure" $200,000 penalty.

Wintz filed a certiorari appeal to this court from the compensation judge's decision, and this court issued an order accepting jurisdiction over the appeal.

## ISSUES

1. Did the compensation judge err by retroactively assessing a penalty that was not authorized until July 1, 1992?

2. Did the compensation judge err in calculating the amount of the penalty?

3. Did the legislature unconstitutionally delegate to the Commissioner of Labor and Industry legislative authority to determine appropriate penalties?

4. Did the compensation judge impose an excessive penalty prohibited by the constitution?

## ANALYSIS

When the Commissioner of Labor and Industry has reason to believe that an employer has not obtained statutorily required workers' compensation insurance, the Commissioner may issue an order directing the employer to obtain the insurance, to refrain from employing anyone until the insurance is obtained, and to pay a penalty of up to $1,000 per employee per week during which the employer has not obtained the insurance. *See* Minn.Stat. §§ 176.011, subd. 6(4) (1992) (defining commissioner as the Commissioner

of Labor and Industry); 176.181, subd. 2 (1992) (requiring employers to have workers' compensation insurance); 176.181, subd. 3(a) (1992) (establishing penalty for employers not having workers' compensation insurance). An employer who receives such an order from the Commissioner may contest the order under Minn.Stat. § 176.181, subd. 3(b) (1994). If an employer contests an order, the Commissioner shall refer the matter to the Office of Administrative Hearings for an expedited hearing before a compensation judge. *Id.*

Minn.Stat. § 176.181, subd. 3(b) contains no provision for appeal of the compensation judge's decision. In the absence of a statutory provision specifying the method for appellate review of a quasi-judicial agency decision, certiorari review in this court is proper. *In Re License of Haymes,* 444 N.W.2d 257, 259 (Minn.1989). Our standard of review in this situation is limited to examining the record to review

> questions affecting the jurisdiction of the [agency], the regularity of its proceedings, and, as to [the] merits of the controversy, whether the order or determination in a particular case was arbitrary, oppressive, unreasonable, fraudulent, under an erroneous theory of law, or without any evidence to support it.

*Dietz v. Dodge County,* 487 N.W.2d 237, 239 (Minn.1992) (quoting *State ex rel. Ging v. Board of Educ.,* 213 Minn. 550, 571, 7 N.W.2d 544, 556 (1942), *overruled on other grounds by Foesch v. Independent Sch. Dist. No. 646,* 300 Minn. 478, 485, 223 N.W.2d 371, 375 (1974)).

### I.

Wintz claims that the compensation judge did not have jurisdiction to impose a penalty for the period from July through October 1992. *See Dietz,* 487 N.W.2d at 239 (authorizing court to review questions affecting jurisdiction of agency). This court may independently review a question of agency jurisdiction. *See Ojala v. St. Louis County,* 522 N.W.2d 342, 343 (Minn.App.1994) (stating that whether agency had jurisdiction under act was question of law upon which appellate court did not have to defer to agency);

*In Re DeLaria Trans., Inc.,* 427 N.W.2d 745, 748 (Minn.App.1988) (stating that ultimate question of agency authority to act is one of law).

Wintz argues that its failure to obtain Minnesota workers' compensation coverage commenced in August 1991, when it went to West Virginia. Therefore, Wintz argues, any penalty must be determined according to the law in effect in August 1991. At that time, the law provided for a civil action by the state, with a maximum penalty of $5,000 for willful and deliberate non-compliance. Minn. Stat. § 176.181, subd. 3 (1990).[1] This penalty changed in 1992, effective July 1, 1992. 1992 Minn.Laws ch. 510, art. 3, §§ 17, 37. Minn. Stat. § 176.181, subd. 3(a) (1992), authorized a much larger penalty of up to $1,000 per employee per week of non-compliance.

Wintz contends that the compensation judge, in effect, imposed a penalty under the new law for behavior that had commenced in August 1991, prior to the effective date of the new law. Wintz characterizes this as a retroactive application of the new law, in violation of the following legislative mandate:

No law shall be construed to be retroactive unless clearly and manifestly so intended by the legislature.

Minn.Stat. § 645.21 (1994).

The compensation judge rejected Wintz's arguments, instead adopting the state's position that Wintz's conduct could be described as a continuing violation, justifying a cause of action at any time during the course of the violation and any time thereafter, up to the applicable statute of limitations. *See Sigurdson v. Isanti County,* 448 N.W.2d 62, 68 (Minn.1989) (stating that employer's gender discrimination in failing to promote employee was a continuing violation, which was not barred by statute of limitations).

The judge correctly determined that Wintz's conduct constituted a continuing violation. In *State v. Howard,* 360 N.W.2d 637, 640 (Minn.App.1985), this court concluded that the state could prosecute an individual for violating a new statute where the individual's conduct continued after the effective date of the statute

because otherwise the State would be prevented from enforcing, through the criminal process, any laws that change the legality of conduct that had previously been conducted and was of a continuous nature.

A similar rationale applies here. Wintz continued to violate the workers' compensation laws after they were amended. Wintz's violation of the amended statute is not less serious because its conduct began before the statute was amended.

Wintz also claims that the state inappropriately split the case into two penalty matters; one prior to July 1992 and one beginning in July 1992. Wintz cites *Charboneau v. American Family Insurance Co.,* 481 N.W.2d 19, 21 (Minn.1992), where the supreme court stated:

This court has long followed the general rule that a party to court litigation may not split a cause of action. This rule applies equally to bringing two lawsuits with slightly different theories of recovery (*e.g.* negligence and breach of warranty) and to alleging different damages. Similarly, a plaintiff may not bring a claim for property damage in conciliation court and then pursue a claim for personal injuries in district court.

The rule against splitting a cause of action is intended to avoid a multiplicity of lawsuits and wasteful litigation.

(Citations omitted.)

The state did not split this cause of action. Only one action was commenced.

## II.

■ Wintz claims that the legislature unconstitutionally delegated to the Commissioner of Labor and Industry the authority, without guidelines, to impose penalties. According to Wintz, section 176.181, subdivision 3(a), does not provide a sufficient guide to the Commissioner when imposing penalties, resulting in a potential for arbitrary action.

---

1. The former law also provided for an increased penalty upon continuing non-compliance, commencing ten days after notice by the commission-er. Minn.Stat. § 176.181, subd. 3 (1990). The Commissioner did not serve a notice of penalty assessment on Wintz until Nov. 2, 1992.

The legislature may delegate power to an administrative agency if the statute provides a reasonably clear policy to guide the administrative officers, so the law takes effect by its own terms, rather than according to the whim or caprice of the administrative officers.

*Askildson v. Commissioner of Pub. Safety,* 403 N.W.2d 674, 677 (Minn.App.1987), *review denied* (Minn. May 28, 1987).

The supreme court has indicated that a legislative delegation of discretion to an administrative officer may be upheld absent specific standards in a statute where the statute "relates to the administration of a police regulation which is necessary to protect the general health, welfare, and safety of the public." *Anderson v. Commissioner of Highways,* 267 Minn. 308, 311–12, 126 N.W.2d 778, 780–81 (1964). The Workers' Compensation Act is necessary to protect the public's health, welfare, and safety. *See D.W. Hutt Consultants, Inc. v. Construction Maintenance Sys., Inc.,* 526 N.W.2d 62, 65 (Minn.App.1995) (purpose of Workers' Compensation Act is to provide security for workers and to shift economic loss to industry and public by holding employers strictly liable for employees' work-related injuries). Thus, delegating to the Commissioner the power to impose penalties is not unconstitutional.

■ Furthermore, the statute specifically authorizes the Commissioner to issue an order directing a penalty "of up to $1,000 per employee per week during which the employer was not in compliance." Minn. Stat. § 176.181, subd. 3(a). The statute also authorizes a review of any penalty by a compensation judge in the Office of Administrative Hearings. *Id.,* subd. 3(b). Further review is available in this court by certiorari. *See Haymes,* 444 N.W.2d at 259 (stating that in absence of statute or appellate rule granting right of discretionary review of quasi-judicial agency decision, certiorari review is appropriate); *cf. Breimhorst v. Beckman,* 227 Minn. 409, 433, 35 N.W.2d 719, 734 (1949) (upholding delegation of adjudicatory powers to administrative agency despite separation-of-powers challenge where finality of agency's decision was subordinate to certiorari review

by appellate court). These restrictions prevent a penalty from being assessed according to the whim or caprice of the Commissioner. The statute does not unconstitutionally delegate to the Commissioner authority to impose penalties.

**III.**

■ Wintz argues that the civil penalty imposed by the compensation judge is not supported by the evidence. Wintz contends that the judge improperly concluded that it would have purchased workers' compensation insurance through the ARP for the four-month period from July through October 1992 when the evidence showed that Wintz could have purchased insurance from a commercial insurer for less than it would have had to pay for coverage through the ARP.

■ Factors to consider when determining the amount of a civil penalty include

(1) the good or bad faith of the defendant; (2) the injury to the public; (3) the defendant's ability to pay; and (4) the desire to eliminate the benefits derived by the violation.

*State v. Alpine Air Prods., Inc.,* 490 N.W.2d 888, 896–97 (Minn.App.1992), *aff'd on other grounds,* 500 N.W.2d 788, 793 (Minn.1993) (stating that civil penalty issue had not been raised in petition for further review and that court therefore declined to address this issue).

Wintz was able to purchase workers' compensation coverage from TIG in November 1992. The amount of the premium was $951,193 for one year, or $317,064 for four months, with a $250,000 deductible. This amount is less than the $1,019,220 that the judge determined Wintz would have paid the ARP for coverage for July through October 1992. The Director of Underwriting for Risk Management Services of TIG testified that if Wintz had come to TIG in July 1992 with the same request for insurance that it made in November 1992, TIG would have written the same policy in July that it wrote in November. Wintz concludes that because the policy it bought in November could have been purchased in July, the benefit it derived from its failure to obtain workers' compensation in-

surance was the cost of the commercial policy it purchased in November, not the cost of coverage through the ARP. We disagree.

Wintz's argument rests upon a conclusion that the TIG policy is the policy it would have bought if it had obtained insurance in July. But the evidence did not compel the compensation judge to reach this conclusion. The fact that the TIG policy was available in July demonstrates only that Wintz could have bought it then; it does not demonstrate that if Wintz had purchased insurance in July, the TIG policy is the policy it would have purchased.

When considering what benefit Wintz derived from its failure to obtain workers' compensation insurance, the compensation judge faced the difficult task of determining the premium Wintz would have paid for an insurance policy that it did not buy. To make this determination, the compensation judge examined the evidence of what Wintz actually did in the past and conditions in the insurance market in 1992 and drew an inference that Wintz would have purchased insurance through the ARP in July 1992. The compensation judge stated:

Depending on the expert, the avoided Minnesota premium estimates for calendar year 1992 ranged from roughly $900,000 to $5.4 million. I have adopted the calculation method of John Hildebrandt, President of the Workers Compensation Insurance Association of Minnesota. He placed the avoided premium for 1992 at $3,630,000.00. I consider his opinion to afford the best estimate of Minnesota premiums avoided for the calendar year 1992.

Mr. Hildebrandt's calculation method parallels that used by the Minnesota Assigned Risk Plan. The evidence establishes Wintz Parcel Drivers, Inc. secured Minnesota workers compensation coverage in 1989, 1990 and through August of 1991 through the Assigned Risk plan. Additionally, testimony revealed more than 50% of Minnesota trucking businesses were insured by the Minnesota Assigned Risk Plan during the period at issue in this case.
* * *

The compensation judge specifically found that Wintz's claim that it would have bought commercial insurance was not persuasive. The judge stated:

I note I have not ignored the [relator's] theory in reaching my decision. The way the [relators] calculate it, Wintz Parcel Drivers, Inc. actually paid $46,530 more under the West Virginia compensation system than it would have been obligated to pay for Minnesota coverage during the period July 1, 1992 through October 31, 1992. Their accounting, while creative, is unpersuasive. The evidence indicates the [relators] made a thorough study of workers compensation premium alternatives before turning to West Virginia for coverage. I consider it highly unlikely that [relators] would have embarked on their West Virginia course if less expensive—or indeed even comparably priced—coverage was available in Minnesota's competitive insurance market.

The evidence cited by the compensation judge supports an inference that, had Wintz purchased insurance in July 1992, it would have purchased it through the ARP. This court must refrain from substituting its judgment regarding the inferences to be drawn from the evidence for that of the administrative decisionmaker. *Gibson v. Civil Serv. Bd.*, 285 Minn. 123, 126, 171 N.W.2d 712, 715 (1969).

Unless there is manifest injustice, this limitation applies even though it may appear that contrary inferences would be better supported or we would be inclined to reach a different result, were we the triers of fact.

*Id.*, 171 N.W.2d at 715.

Wintz also argues that expert testimony established that Wintz could not have participated in the ARP in 1992 because it was in default of past premiums and, based on the TIG policy, it was able to obtain a policy in the commercial market. This evidence does not compel a conclusion that Wintz would have purchased the TIG policy in July 1992. Wintz could have paid any past-due premiums to become eligible for coverage through the ARP. However, because Wintz did not obtain coverage, there was no reason for it to pay the past-due premiums. Also, we find no

evidence that Wintz knew in July 1992 that it could purchase the TIG policy.

### IV.

■ Wintz claims that the judge improperly excluded evidence of the Commissioner's practice in other cases. Wintz apparently believes that this evidence would have indicated the standards the Commissioner uses when imposing penalties.

Wintz has provided no analysis or argument in support of this claim.

> An assignment of error based on mere assertion and not supported by any argument or authorities in appellant's brief is waived and will not be considered on appeal unless prejudicial error is obvious on mere inspection.

*Schoepke v. Alexander Smith & Sons Carpet Co.,* 290 Minn. 518, 519–20, 187 N.W.2d 133, 135 (1971).

Finally, Wintz claims that in Minn.Stat. § 176.181, subd. 3, the legislature has authorized excessive fines prohibited by the Eighth Amendment to the United States Constitution. Again, Wintz broadly states this claim, without any supporting argument or analysis. Under *Schoepke,* Wintz has waived this claim by failing to provide any supporting argument or authorities in its brief.

### DECISION

Because Wintz's failure to obtain workers' compensation insurance continued after the statutory civil penalty for failing to obtain insurance was increased, the increased penalty may be assessed for conduct that occurred after the penalty was increased. The state did not split its cause of action against Wintz. Minn.Stat. § 176.181, subd. 3(a), does not unconstitutionally delegate to the Commissioner of Labor and Industry authority to impose a civil penalty. The penalty imposed by the compensation judge is supported by the evidence. Wintz waived its claims that the compensation judge improperly excluded evidence and that Minn.Stat. § 176.181, subd. 3, unconstitutionally authorizes excessive fines.

**Affirmed.**