**Lawrence K. DAVIES, on behalf of himself and all others similarly situated, Respondent,**

v.

**WEST PUBLISHING COMPANY, et al., Appellants.**

No. C1–00–1324.

Court of Appeals of Minnesota.

March 6, 2001.

Guy M. Burns (admitted pro hac vice), Johnson, Blakely, Pope, Bokor, Ruppel & Burns, Tampa, FL; and Thomas J. Lyons, Sr., Thomas J. Lyons, Jr., Thomas J. Lyons & Associates, P.A., Maplewood, MN, (for respondent).

Vernon J. Vander Weide, Thomas V. Seifert, Head, Seifert & Vander Weide, Minneapolis, MN, (for appellants).

Considered and decided by KALITOWSKI, Presiding Judge, RANDALL, Judge, and CRIPPEN, Judge.

## OPINION

KALITOWSKI, Judge

This case involves respondents' contention that West Publishing Company, through an association it controlled, improperly distributed the association's surplus funds to all West employees and not just to employees who deposited funds with the association. The sole issue on this appeal involves the application of a six-year statute of limitations to West's allegedly improper distributions. In determining that the statute of limitations did not apply, the district court certified three questions to this court as important and doubtful pursuant to Minn. R. Civ. App. P. 103.03(h) (2000): Does repealed Minn.Stat. § 50.12 (repealed 1995) bar application of a statute of limitations? Does the continuing violation doctrine toll the running of the statute of limitations? Have respondents presented sufficient evidence of equitable estoppel to prevent application of the statute of limitations?

This court has rephrased the three certified questions to accurately reflect the law.

## FACTS

West Publishing Employees' Preferred Stock Association (WPSA) was created in 1912 by West Publishing Company (West) to provide West employees an opportunity to voluntarily deposit part of their paychecks in an account managed by WPSA. At all times, those with accounts were promised and paid a guaranteed rate of return. Those who chose to participate could withdraw part or all of the money they deposited at any time. Members received quarterly statements that provided their current balance and reported any account activity.

The West employee handbook informed employees that all full-time West employees were members of WPSA, regardless of whether they chose to make deposits in the saving plan. When employees left West they were paid the balance on their accounts, if any, plus guaranteed interest that had accrued to that date.

WPSA was governed by six officers and two other members, all West executives, who were elected at WPSA's annual meetings. It is undisputed that WPSA members received notice of WPSA's annual meeting and were allowed to attend. Members received one vote for every $10 in deposits. At the annual meeting, the treasurer presented a statement that included information on WPSA's investments, members' deposits, and its reserve or surplus. The evidence in the record indicated that no one had ever asked for the minutes from the annual meetings, but that if asked, the treasurer would have provided any member with a copy.

Over time WPSA accumulated a surplus. Beginning in January of 1967, the WPSA governing board began making distributions from the surplus to all full-time West employees on a per capita basis, regardless of whether they had deposits with WPSA. On 16 separate occasions, WPSA made payments from surpluses to West employees in the same fashion, typically, in the amount of $150 or $200 per employee. The decision on the time and amount of the distribution was based on a number of variable criteria. There was no evidence that questions about the distributions were raised at any of the annual meetings.

WPSA included a letter with each distribution informing employees that all full-time West employees were members of WPSA, that a special distribution was being paid to all members in the same amount, that the special distribution was attributable to successful investment and management of WPSA funds, and that no special distribution could be guaranteed in the future. The last of 16 distributions took place on November 29, 1996.

After West was purchased by The Thomson Corporation, the WPSA governing board decided to dissolve and terminate WPSA. At this time, WPSA had a surplus of approximately $8.6 million. The Minnesota Department of Commerce, pursuant to a consent decree with West, requested that WPSA pay out all funds on deposit and distribute the surplus in an equitable manner.

Subsequently respondent Lawrence K. Davies filed a lawsuit to contest the distributions that were paid to all full-time West employees by WPSA from January 1967 to November 1996, claiming that the distributions should have been made only to employees with funds on deposit with WPSA. The district court certified the case as a class action that eventually included all employees of West who had funds on deposit with WPSA at any time between January 20, 1967, and July 31, 1999. The district court denied summary judgment on the limited issue of whether the six-year statute of limitations barred the class members' challenge to 15 of the distributions and certified to this court three questions concerning application of the statute of limitations.

## ISSUES

1. Are the certified questions important and doubtful?

2. Does repealed Minn.Stat. § 50.12 (repealed 1995), which applied to claims "for deposits," apply to claims by members of an unincorporated voluntary association against their corporate employer for alleged breach of fiduciary duty arising from the distribution of surplus money that exceeded member deposits and guaranteed interest?

3. Does the continuing violation doctrine toll or extend the six-year statute of limitations of Minn.Stat. § 541.05, subd. 1(1) (2000), for a claim for breach of fiduciary duty alleging improper distributions made over a 30–year period?

4. Is there evidence in the record to prove the necessary elements of equitable estoppel so as to toll the running of the six-year statute of limitations?

## ANALYSIS

### I.

Respondents first contend that the district court's certified questions are not "important and doubtful." This court may hear an appeal from a denial of a motion for summary judgment "if the trial court certifies that the question presented is important and doubtful." Minn. R. Civ.App. P. 103.03(h) (2000); *Jostens, Inc. v. Federated Mut. Ins. Co.*, 612 N.W.2d 878, 883 (Minn.2000). Whether a question is important and doubtful raises a legal question and is subject to de novo review by this court. *Jostens*, 612 N.W.2d at 883.

In determining if a question is important, we balance a number of factors. *Id.* at 884. A question is increasingly important if it has statewide impact, reversal is likely, lengthy proceedings will be terminated, and a district court's incorrect ruling will inflict substantial harm on the parties. *Id.* A question is decreasingly important if it will be affirmed, a trial will moot the issue, reversal will not terminate the action, and reversal would not relieve the parties of a significant burden. *Id.* But each factor does not warrant equal consideration. *Id.* "[A] great deal of importance should be placed on whether reversal of the question will terminate the proceedings." *Id.*

Here, while our decision on the three certified questions presented does not terminate the proceedings, our application of the six-year statute of limitations invokes a number of the balancing factors that favor a finding of increasing importance. By reversing the district court and applying the statute of limitations, 15 of the 16 distributions will no longer be part of this litigation. This will greatly reduce the length and complexity of the proceedings and substantially reduce the burden appellants would otherwise face of defending distributions that took place over a 30–year period. We thus conclude the issues presented here are important.

"A question is properly certified as doubtful if there is no controlling precedent." *Id.* at 884–85 (citation omitted).

> That the question is one of first impression is not, however, of itself sufficient to justify certification as doubtful; the question should be one on which there is substantial ground for a difference of opinion.

*Id.* (quotation omitted). Applying this standard, the questions presented are doubtful.

The first question involves the applicability of repealed Minn.Stat. § 50.12 (repealed 1995). There are no cases discussing section 50.12, and the statutory language was not written to deal with the unique situation presented here. The second and third questions deal with the application of the continuing violation doctrine and equitable estoppel. Although there are cases discussing the application of both doctrines, no case is controlling, and their applicability to the facts here is in doubt. Thus, we conclude that all three questions raise issues of first im-

pression, the resolution of which is subject to a difference of opinion.

## II.

■ Appellants contend the district court erred in finding that Minn.Stat. § 50.12, repealed in 1995, is a bar to their statute-of-limitations defense. Application of a statute to the undisputed facts of a case involves a question of law, and the district court's decision is not binding on this court. *Lefto v. Hoggsbreath Enters., Inc.*, 581 N.W.2d 855, 856 (Minn.1998) (holding that this court reviews de novo the district court's decision on summary judgment based on the application of a statute).

■ The former section 50.12 stated:

The statutes limiting the time for the commencement of actions shall have no application to actions brought by depositors, their representatives, or assigns against savings banks for deposits therein.

This statute specifically references savings banks. And while respondents meet the statutory definition of depositors by virtue of their accounts with funds on deposit with WPSA, it is not clear that West qualifies as a "savings bank." But even if West comes under the statute because of the actions of WPSA, respondent's lawsuit does not seek to recover deposits, and therefore section 50.12 does not apply. The plain language of Minn.Stat. § 50.12 indicates a legislative intent to assure that depositors not be deprived of money they deposited in a savings bank as a result of the application of a statute of limitations. Here, it is undisputed that all persons who deposited money with WPSA, regardless of whether they remained employees of West, received all money they deposited, plus the agreed-upon interest on their deposits. This action involves respondents' claim for surplus money, resulting from investments, that exceeded the guaranteed interest returned on deposits. Because we conclude that respondents' claim for this surplus money is not an action "for depos-

its therein," Minn.Stat. § 50.12 does not apply.

## III.

■ Appellants argue that the district court erred in finding that the 16 distributions paid by WPSA were part of a continuing course of conduct, thereby tolling the statute of limitations. The application of law to stipulated facts is a question of law, which this court reviews de novo. *Morton Bldgs., Inc. v. Commissioner of Revenue*, 488 N.W.2d 254, 257 (Minn.1992).

■ The continuing violation doctrine is most commonly applied in discrimination cases involving wrongful acts that manifest over a period of time, rather than in a series of discrete acts. *See Sigurdson v. Isanti County*, 448 N.W.2d 62, 66–67 (Minn.1989); *Giuliani v. Stuart Corp.*, 512 N.W.2d 589, 595 (Minn.App.1994). Contrary to appellants' assertion, the doctrine has been applied outside the employment discrimination context. *Northern States Power Co. v. Franklin*, 265 Minn. 391, 397, 122 N.W.2d 26, 28–29 (1963) (trespass); *State Dep't of Labor & Indus. v. Wintz Parcel Drivers, Inc.*, 555 N.W.2d 908, 912 (Minn.App.1996) (workers' compensation coverage), *review granted in part, decision modified*, 558 N.W.2d 480 (Minn.1997). When the doctrine is applied, the final act is used to determine when the statute-of-limitations period begins for the entire course of conduct. *Sigurdson*, 448 N.W.2d at 66.

■ No case has applied the continuing violation doctrine to a fact situation at all similar to this case. Moreover, appellant contends that because respondents allege a breach of fiduciary duty, this action sounds in contract rather than tort, and the doctrine has no application. But even if we were inclined to extend application of the doctrine to a claimed breach of fiduciary duty, we conclude that the alleged wrongful acts here are not a course of continuing conduct, but rather 16 separate

actions each of which allegedly damaged respondents.

We find instructive the supreme court's application of the statute of limitations in *Toombs v. Daniels*, 361 N.W.2d 801 (Minn. 1985). *Toombs* involved an adopted child's claims concerning income distributions she did not receive from a family trust. *Id.* at 803. In *Toombs*, the Minnesota Supreme Court held that

> the statute of limitations as to the various income distributions over the years began to run as to each distribution when the right to receive the particular payment [was not contested].

*Id.* at 810.

Here, as in *Toombs*, distributions were paid out over a period of years and WPSA depositors did not contest those distributions at the time they were made. Moreover, because WPSA's surplus was distributed over 30 years, in 16 separate and distinct payments, it cannot be characterized as continuous. A letter explaining that distributions were not guaranteed in the future accompanied each distribution. The distributions were not paid out according to a set time schedule, and the decision to make each distribution was made separately by the WPSA governing board. In addition, the decision to pay the distributions was contingent on unpredictable variables, including the amounts of anticipated withdrawals and deposits and the success of WPSA investments. We conclude that even if the continuing violation doctrine could apply here, because each distribution was a separate and distinct act that could have been challenged by respondents, the doctrine does not toll application of the six-year statute of limitations.

## IV.

At issue with regard to the third certified question is the doctrine that a party may be barred from asserting a statute of limitations defense if its conduct satisfies the elements of equitable estoppel. *Rhee v. Golden Home Builders*, 617 N.W.2d 618, 621 (Minn.App.2000). Gener-

ally, estoppel presents a question of fact for the jury unless only one inference can be made from the facts. *Drake v. Reile's Transfer & Delivery, Inc.*, 613 N.W.2d 428, 434 (Minn.App.2000). Here, appellants contend the district court erred in failing to hold that the doctrine of equitable estoppel does not apply as a matter of law because respondents failed to present facts to prove the necessary elements. We agree.

One of the elements necessary to establish equitable estoppel is a misrepresentation. *Transamerica Ins. Group v. Paul*, 267 N.W.2d 180, 183 (Minn.1978); *see Rhee*, 617 N.W.2d at 621 (holding that misrepresentation can include silence or failure to disclose material fact). Here, we conclude there are no facts in the record to establish a misrepresentation with regard to WPSA's distribution of surplus funds. The record indicates that all WPSA depositors received letters with each distribution, informing them that (1) the distributions were being paid out of money earned from successful investment of WPSA funds; (2) all full-time West employees were members of WPSA; and (3) the same distribution amount was being paid to all WPSA members. Thus, all members of respondent class had notice that all full-time West employees were receiving the same amount of money, earned from WPSA investments, regardless of whether they had deposited money with WPSA. These undisputed facts lead us to conclude as a matter of law that there was no actionable misrepresentation regarding the nature or source of the challenged distributions. Therefore, the doctrine of equitable estoppel does not apply to toll the statute of limitations.

## DECISION

The three questions presented by the district court pursuant to Minn. R. Civ. P. 103.03(h) are important and doubtful. Our answers to the certified questions are: (1) repealed Minn.Stat. § 50.12, which barred

the application of a statute of limitations to actions "for deposits therein," does not apply to an action by depositors who received all the funds they deposited plus interest and are only claiming a right to additional funds generated by investments that exceeded the guaranteed interest on their deposits; (2) the continuing violation doctrine does not apply to toll the statute of limitations for an action challenging distributions paid out over 30 years, in 16 separate transactions, where the distributions, which were never contested, were neither promised, guaranteed, nor made at regular time intervals, and where the decision to distribute was made based on a number of variable criteria; and (3) the doctrine of equitable estoppel does not apply as a matter of law where there is no evidence of misrepresentation.

**Certified questions answered in the negative.**

RANDALL, Judge (dissenting)

I respectfully dissent. I agree with the certification, but I also agree with the district court's finding that defendant/appellant's statute of limitations defense is inapplicable.

In its May 1, 2000, order, the district court's accompanying memorandum stated in relevant part:

The Court rules that Defendants' statute of limitations defense is inapplicable. The Court makes this ruling on two alternative theories 1) Former Minn. Stat. § 50.12 is applicable here and serves to bar the statute of limitations defense; and alternatively, 2) Minn.Stat. § 541.05 may apply, however, * * * because Defendants' actions constitute a continuing course of action, the six year period did not start to run until the last distribution made in 1998.

Addressing Minn.Stat. § 541.05, the district court said in relevant part:

Second, this Court finds that WPSA's manner of operation throughout the approximately 30 years of its existence

where it made pro-rata distributions to all employees, may be characterized as a continual, fluid process of non-disclosure to its depositors. The Court finds that the series of distributions of moneys from the WPSA fund constitute a continuing course of conduct, rather than an isolated series of events. Improper distributions continued in a systematic, periodic pattern from 1967 until the last distribution approximately 30 years later in 1996. The Court agrees that Minnesota recognizes a "continuing torts doctrine" under which a tort is deemed continuous as opposed to a one-time event, and the limitations period does not begin to run until the date the tortious conduct ends. Hence, here since the 16 all-employee distributions started in 1967 and ended in 1996, no statute of limitations can run until the date of the last distribution, which was on November 29, 1996.

The district court correctly noted that the statute of limitations could not begin to run until November 1996, and because the plaintiffs brought their action in 1999, it was easily within the six-year limit.

The majority acknowledges that the continuing violation doctrine is not confined (although commonly applied) to discrimination cases. I find nothing negative in the Minnesota Supreme Court case of *Toombs v. Daniels*, 361 N.W.2d 801 (Minn.1985), because *Toombs* was not a continuing violation case. There is no indication in the record that the plaintiff sought application of the doctrine. *Toombs*, actually, is an excellent example of the potentially harsh results of not applying the doctrine; it is not authority for failing to do so.

*Toombs* examined two separate limitations, neither relevant to the instant case. Under Minn.Stat. § 541.05, subd. 1(6), which limits fraud claims, the plaintiff could only reach trust distributions that occurred in the six years prior to the claim. *Toombs*, 361 N.W.2d at 810. *It is precisely because the continuing violation doctrine was not argued or applied that*

*the plaintiff could not reach earlier fraudulent distributions.* The other limitation considered in *Toombs* was § 541.05, subd. 1(7), which involves trusts. The majority cites language considering when the clock starts ticking for such claims. These citations are not "instructive" because the statute of limitations has certainly run in the case at bar (assuming § 50.12 is inapplicable). Respondent admits this. This is why he asserts (as the plaintiff in *Toombs* should have) the continuing violation doctrine. Citations concerning when a clock starts ticking are of no use when everyone agrees time is up.

In the final analysis, I conclude, as the district court did, that nonstop conduct occurring over "x" years, comprising "x" payments is, as a matter of law, continuous.

I dissent and would remand this case to the district court for further proceedings.